**TEXAS UNITY OIL CO. et al. v. DOLMAN.**
(No. 11960.)

Court of Civil Appeals of Texas. Fort Worth. April 28, 1928.

Rehearing Denied June 2, 1928.

1. **Principal and agent ⊜23(1)—Evidence held insufficient to show that defendant oil company was principal for which third person acted in making drilling contract and taking over interest in oil leases.**

In action against well-drilling contractor and oil company for balance due for hauling rigs, evidence *held* insufficient to show that such company was principal for which third person acted in making drilling contract, and taking over interest in oil leases in his own name.

2. **Evidence ⊜75—Defendants' failure to produce evidence cannot be considered in determining issues raised by plaintiff's evidence until plaintiff makes out prima facie case.**

Rule, that defendants' failure to produce evidence in their possession to show that legitimate inferences from plaintiff's evidence are false can be considered in determining issues raised by plaintiff's evidence, does not apply until plaintiff makes out a prima facie case against defendant.

3. **Evidence ⊜54—Presumption of fact cannot rest on presumed fact.**

A presumption of fact cannot rest on a fact presumed, but fact relied on to support presumption must be proved by direct evidence.

4. **Frauds, statute of ⊜158(2)—Evidence of declarations that defendant oil company owned interest in oil lease held inadmissible to prove its title at time of plaintiff's employment to haul drilling rigs; oil lease being realty (Rev. St. 1925, art. 1288).**

Under Rev. St. 1925, art. 1288, requiring conveyance of land by written instrument, evidence of declarations of employee and officer of oil company that it owned oil lease or interest therein was inadmissible to prove title in such company at time of plaintiff's employment to haul drilling rigs; an oil lease being realty.

5. **Evidence ⊜75—Plaintiff introducing witness, who testified to facts overcoming presumption of defendant company's possession of other facts showing it to be partnership or joint undertaker, cannot invoke rule permitting consideration of defendants' failure to produce evidence.**

Plaintiff introducing as witness defendant oil company's president, who testified without contradiction as to facts overcoming presumption that company was in possession of any other facts tending to show that it was a partnership or joint undertaker with codefendants in employing plaintiff to haul rigs, could not invoke rule that defendants' failure to produce evidence may be considered in determining issues raised by plaintiff's evidence.

6. **Mines and minerals ⊜110—Independent contractor, receiving full contract price, is alone liable for debts incurred in performing contract.**

One undertaking drilling of oil wells as independent contractor and receiving full payment of contract price is alone liable for debts incurred in carrying out contract.

7. **Mines and minerals ⊜109—That owner of interest in oil lease bound himself jointly with drilling contractor to pay for hauling rigs after agreeing to transfer interest to another would not make transferee or his employer liable.**

That owner of interest in oil lease bound himself jointly with drilling contractor to pay for hauling of latter's rigs, after entering into parol agreement to transfer an interest in leases to third person in consideration of money to be advanced for development purposes, would not make transferee or his employer liable to hauler for services rendered, in absence of allegation or proof that either agreed to pay therefor or authorized transferor or contractor to do so as agents.

8. **Limitation of actions ⊜127(3)—Supplemental petition, alleging joint undertaking by defendants instead of partnership, held not to state new cause of action barred by limitations.**

Supplemental petition, alleging that plaintiff's employment to haul well-drilling rigs was joint undertaking of drilling contractor, oil company, and third party, *held* not to state new cause of action barred by limitations, where only difference between facts pleaded in original and supplemental petitions was that former alleged a partnership liability.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by W. E. Dolman against the Texas Unity Oil Company and Claude Bell. Judgment for plaintiff, and defendants appeal. Reversed and rendered as to defendant oil company, and affirmed as to defendant Bell.

Bonner, Bonner & Fryer, of Wichita, for appellant Texas Unity Oil Co.

E. C. De Montel and W. H. Sanford, both of Wichita Falls, for appellant Bell.

Kenley, Dawson & Holliday, of Wichita Falls, for appellee.

DUNKLIN, J. On January 5, 1925, W. L. Goldston, Jr., and H. W. McGee, recited to be the owners of certain oil and gas leases on 480 acres of land, entered into a written contract with Claude Bell, who was a well-drilling contractor, by the terms of which Bell agreed to drill two wells for oil and gas on the land. The contract recited that:

"Said wells are each and both to be drilled by the second party at his sole and entire cost and expense and without charge or expense to parties of the first part."

In the contract, Goldston and McGee were designated as parties of the first part and Claude Bell as party of the second part. The contract further recited that Bell was to be paid for the work $12,000 in money and was also to receive an undivided one-fourth interest in and to the leases.

About the 1st of December, 1924, Claude Bell and McGee employed W. E. Dolman to haul two drilling rigs to the above-described land, one of which was then located at Graham, Okl., and the other near Greenville, Tex.; the consideration to be paid for such hauling was $3,750. The purpose of McGee and Bell in having the rigs hauled was to develop the leases for oil and gas, and at that time McGee and one McNeil owned the leases. On February 5, 1925, they conveyed an interest in those leases to Goldston.

Prior to the contract so made with Dolman, there was an agreement between McGee and McNeil on the one hand and Goldston on the other for the sale of an interest in the leases which McGee and McNeil then held, to W. L. Goldston, and the assignment thereafter made on or about February 5, 1925, from McGee to Goldston was in consummation of that preliminary agreement. The agreement of McGee to so transfer that interest was in order to raise the necessary money to pay Claude Bell for drilling, since McGee was unable to finance the enterprise.

Dolman finished the hauling of the rigs on or about December 19, 1924, and immediately thereafter Bell spudded in one of the wells and later completed his contract, and was paid the full consideration of $12,000, for which he contracted to do the work, and some $2,000 additional. He also received a duly executed transfer of the undivided one-fourth interest in the leases stipulated in his contract with Goldston and McGee.

At the time of the transactions above noted, Goldston was an employee of Franklin Bros., residing in New York City, and engaged in the oil business in the state of Texas. Goldston was so employed as a geologist. Franklin Bros. did business through the medium of four private corporations—one of which was the Texas Unity Oil Corporation, incorporated under the laws of the state of Texas; another was the Big State Oil Corporation; another, State Royalty Corporation; and another, the U. S. Texas Oil Company. The headquarters of the Franklin Bros. organization for their Texas business was in the city of Dallas, and Leon G. Russ was in general charge of all their Texas business. He was also president of the Texas Unity Oil Company. The money required to finance the business of the four corporations which were organized by the Franklin Bros. was furnished by them, and was distributed from their general office in Dallas. Leases acquired by the use of such funds were sometimes taken in the name of one of those corporations and sometimes in the name of another. From that fund Mr. Russ, the general manager, advanced the money paid out to Claude Bell on the drilling contract mentioned above. Goldston did not have any personal interest in the leases acquired by him from McGee and McNeil; he took such interest as a trustee or agent only, but he never assigned the interest acquired to the Texas Unity Oil Company or to any other of the corporations that was financed by Franklin Bros., noted above. The money paid out by Russ to Claude Bell for drilling the two wells was taken out of the common fund furnished by Franklin Bros., and before the same was finally paid he was assured by Claude Bell that all of the liabilities which he had incurred for drilling the two wells had been paid.

This suit was instituted by Dolman against Claude Bell and the Texas Unity Oil Company to recover the balance claimed to be due him for hauling the rigs to the lease, as noted above. In his petition it was alleged that Claude Bell and the Texas Unity Oil Company were partners in the transaction and were liable to him as such. In a supplemental petition filed later, plaintiff alleged, in the alternative, that, if he was mistaken in his allegation in his original petition, to the effect that defendants were partners in the acquisition and development of the leases before mentioned, nevertheless prior to his employment the defendants had acquired or agreed to acquire said leases and had agreed to become jointly interested in the development of said leases for oil and gas, and by reason thereof they were joint adventurers in said leases, and that the employment of plaintiff to do said hauling was in furtherance of that joint adventure, and the defendants received the benefit of the hauling so contracted for, and were therefore bound to plaintiff for the payment of the amount still due.

The trial was before the court without a jury, and the trial judge filed findings of fact and conclusions of law, which appear in the record. One of the findings of fact was that the drilling of the two wells was the joint undertaking of Claude Bell, H. W. McGee,

and the Texas Unity Oil Company, and the employment of Dolman by Bell and McGee early in December, 1924, was in pursuance of said joint undertaking. The court further found, as shown by the evidence, that, after the wells were finished, the plaintiff accepted from Claude Bell, as part payment of the balance then due him, a written contract from Bell to convey to plaintiff an undivided one-sixteenth interest in the leases at an agreed valuation of $1,205, to be entered as a credit upon the contract price then due Dolman for hauling, and that, after allowing that credit, there was still due the plaintiff $2,350. The conclusions of law so filed by the trial judge were as follows:

"I conclude that the defendants, Claude Bell and the Texas Unity Oil Company, were with each other and with said H. W. McGee joint adventurers, or, in legal effect, partners in the drilling of said wells and the development of their said leases, and that the employment of the plaintiff to haul the rigs and equipment with which the drilling was to be done was within the scope of said joint adventure or partnership, and that in legal effect the said Claude Bell and H. W. McGee were the agents of all of said joint adventurers in so doing.

"I conclude that the Texas Unity Oil Company accepted the benefits of plaintiff's performance of said hauling contract, and that it is now estopped from setting up want of corporate capacity to enter into the joint adventure for the development of said leases which it did enter into with said individuals.

"I conclude that the defendants, Claude Bell and Texas Unity Oil Company, jointly and severally are due the plaintiff the amount of the judgment as rendered against them herein."

Judgment was rendered against the defendants in conformity with the conclusions so filed. From that judgment, the Texas Unity Oil Company and Claude Bell have appealed.

[1] The evidence relied upon by the plaintiff in the case to show that the interest in the leases acquired by Goldston was acquired by him for the use and benefit of defendant Texas Unity Oil Company, and that he acted for that company as a principal in executing the contract for the drilling of the well, consisted chiefly of a statement in a letter from Goldston to the plaintiff, to the effect that the lease belonged to the Texas Unity Oil Company, and of certain other statement to a like effect by Leon G. Russ in his negotiations with the plaintiff at the time the latter was trying to collect his bill for the hauling. It was proven that the Texas Unity Oil Company was duly incorporated under the laws of Texas, and we do not believe that the evidence was sufficient to show that that company rather than some other subsidiary corporation of the Franklin Bros. was the principal for whom Goldston acted in making the drilling contract with Claude Bell, and in taking over an interest in the leases in his own name. There was no proof whatever that Goldston ever made any conveyance of the

8 S.W. (2d)—52

leases to that company and no proof that the money paid out by Russ, the manager in charge of Franklin Bros.' office in Dallas, from the general fund furnished for the use and benefit of all four of their subsidiary companies, was in fact charged to or paid out in behalf of the Texas Unity Oil Company.

[2] In I.-G. N. R. Co. v. McGinty (Tex. Civ. App.) 293 S. W. 302, it was said that:

"When a plaintiff has produced evidence sufficient to raise an issue as to * * * his claim, and it appears from the nature of the case and the circumstances disclosed by the evidence that" the defendants are "in possession of evidence which will show whether * * * the inferences which can legitimately be drawn from plaintiff's evidence are true, and does not offer it, it is a fair and legitimate inference that the evidence so withheld by the defendant would, if produced, confirm the inferences arising from plaintiff's evidence;" and "the failure of the defendant to produce the evidence can properly be considered in determining the issues raised by the plaintiff's evidence, and for this purpose" has "affirmative probative force."

In support of his contention that the evidence was sufficient to support the findings that appellant was in law liable as a partner with McGee and Bell, for the amount due him, appellee has cited that decision and several others of like import, such as Meyer v. Viereck (Tex. Civ. App.) 286 S. W. 895; Texas Co. v. Clarke (Tex. Civ. App.) 182 S. W. 351. That rule has no application until plaintiff has first made out a prima facie case against the defendant, and what is said in those decisions imply that qualification. In T. & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049, in which case that rule was invoked and its application denied, the following was said:

"A defendant cannot be called on to produce evidence where the plaintiff has failed to bring sufficient proof to prima facie sustain his cause of action. 2 Wharton on Evidence, § 1268."

[3] It is a further rule, as announced by our Supreme Court in Fort Worth Belt R. Co. v. Helen Jones, 106 Tex. 345, 166 S. W. 1130, that:

"A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. 'No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence as if they were the facts in issue; one presumption cannot be based upon another presumption.' "

[4] The evidence introduced was insufficient, prima facie, to show that appellant, jointly with Claude Bell and H. W. McGee, employed appellee Dolman to haul the rigs in question. By article 1288, Rev. Statutes of 1925, it is provided that title to land cannot be conveyed unless the conveyance be declared by an instrument in writing. Hence evidence of the declarations of the witnesses Goldston and

Russ, to the effect that appellant owned the lease or an interest therein, was inadmissible and incompetent to prove title in appellant at the time of appellee's employment to haul the drilling rigs, and appellant's objection to such evidence should have been sustained; it being a well-known rule that an oil lease is realty. Other circumstances relied upon by appellee to support his allegation of partnership were based chiefly upon the assumption of proof of title, with which they amounted to nothing more than a scintilla of proof. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

[5] There is no basis for the application of the rule invoked by appellee for yet another reason, to wit, appellee himself introduced Russ as a witness, who testified to the facts recited above without contradiction from any other witness, thus overcoming any presumption that appellant was in possession of any other fact which would show or tend to show that it was a partnership or a joint undertaker with Bell or McGee in employing the appellee to do the hauling in question.

[6] However, independently of that conclusion, the evidence shows without contradiction that Claude Bell undertook the drilling of the two wells as an independent contractor, and that he received payment in full of the contract price for such work. It is a well-settled rule that under such circumstances the independent contractor alone is liable for the debts he incurs in carrying out the contract. Burk Burnett Oil Co. v. Robertson (Tex. Civ. App.) 240 S. W. 1046; Sims v. Humble Oil & Refining Co. (Tex. Civ. App.) 252 S. W. 1083; Cunningham v. Railway, 51 Tex. 503, 32 Am. Rep. 632; Mills & Willingham on Oil and Gas, p. 314.

[7] While the written contract with Claude Bell for the drilling was not drawn up until after plaintiff had hauled the rigs to the lease, yet, according to plaintiff's theory, that contract was in accord with and made for the purpose of carrying out the prior parol contract between the same parties, which antedated the employment of plaintiff by McGee and Bell to haul the rigs. However, it is to be noted that it was alleged in plaintiff's petition that the contract for hauling was in fact made with Bell and McGee, and plaintiff so testified. There was neither allegation nor proof that Goldston or the Unity Oil Company agreed to pay plaintiff for the hauling or authorized either McGee or Bell as agents so to do. The drilling rigs that were hauled by plaintiff belonged to Bell, who alone was to do the drilling. If McGee bound himself

jointly with Bell to pay for such services, and even though he had at that time entered into a parol agreement with Goldston to transfer to him an interest in the leases in consideration of money to be advanced for development purposes, those facts did not make even Goldston, to say nothing of the Texas Unity Oil Company liable to Dolman for the services he rendered.

The foregoing conclusions render it unnecessary to determine the merits of many other questions discussed in briefs of counsel for Texas Unity Oil Company.

[8] Plaintiff's first supplemental petition, which was filed more than two years after the accrual of this alleged cause of action, was the first pleading filed in which the employment of plaintiff to haul the rigs was alleged to be a joint undertaking by Bell, McGee, and the Texas Unity Oil Company, and that by reason of such joint undertaking each and all of those parties were liable. Defendant Claude Bell addressed a special exception to the sufficiency of the supplemental petition on the ground that it appeared upon its face that the cause of action therein alleged, was barred by the statute of limitation of two years.

There was no error in overruling that defense, since practically the same facts were pleaded in the original and supplemental petitions; the only difference being that in the original petition it was alleged that, by reason of those facts, a partnership liability was asserted, while, in the supplemental petition, liability was asserted by reason of the conclusions drawn that the employment of plaintiff was a part of a joint undertaking of the parties. Killebrew v. Stockdale, 51 Tex. 529; Kauffman v. Wooters, 79 Tex. 214, 13 S. W. 549; Becker v. G. C. St. Ry., etc., Co., 80 Tex. 486, 15 S. W. 1094.

Authorities cited by appellant Bell in support of the assignment now under discussion have no proper application and are not in conflict with our foregoing conclusion. Some of those authorities are Baptist Book Concern v. Carswell (Tex. Civ. App.) 46 S. W. 858; Rowse v. Woody (Tex. Civ. App.) 197 S. W. 362; and Texas Land & Cattle Co. v. Molina (Tex. Civ. App.) 258 S. W. 216.

For the reasons noted, the judgment of the trial court in favor of appellee against the Texas Unity Oil Company is reversed, and the judgment is here rendered denying appellee any recovery against that appellant. The judgment in favor of appellee against Claude Bell is affirmed.