**WOODS et al. v. HUMBLE OIL & REFINING CO.**

No. 8592.

Court of Civil Appeals of Texas. Austin.

May 4, 1938.

Rehearing Denied Oct. 26, 1938.

Wm. McCraw, Atty. Gen., Vernon Coe and Harry S. Pollard, Asst. Attys. Gen., and Carl B. Callaway, of Dallas (Henry H. Brooks, of Austin, of counsel), for appellants.

R. E. Seagler, of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellee.·

BAUGH, Justice.

This is a rule 37 case. The well involved is located near the center of the East Texas oil field in Gregg County. J. A. Woods et al., as owners of a lease on approximately 17 acres of land, shown in their application to be 288 feet wide and 2,676 feet long, on which they then had four producing wells, were granted a permit by the Railroad Commission, on June 20, 1935, to drill well No. 5 on said tract on the recited ground "to prevent confiscation of property." A motion for rehearing by the Humble Oil & Refining Company, owner of a 201-acre lease adjoining the Woods tract on the west, was granted by the Railroad Commission, a second hearing had on the application, and on February 10, 1936, the Commission reaffirmed its former order granting said permit; but amended it in "that the original order be changed to read, to prevent physical waste, instead of to prevent drainage."

The Humble thereupon filed this suit to set aside said permit on the ground that said additional well in and of itself, and particularly if the necessary offsets on adjoining leases be drilled, would cause waste and result in confiscation of the Humble's property; and that said tract with the wells already drilled thereon was adequately developed and was more densely drilled than the adjacent leases. The trial court, after a full hearing, canceled the permit and permanently enjoined the drilling and operation of said well. From this judgment the Railroad Commission alone prosecutes this appeal.

A distinctive situation is presented in the·instant case in that the exception to the general spacing rule 37 was granted "to prevent physical waste," and not to prevent confiscation of property; and that the Railroad Commission, and not the applicant whose permit was canceled by the trial court, has appealed.

It affirmatively appears that the tract in question is more densely drilled than the adjoining leases both east and west of it, wells thereon under proration allowables

producing more oil per acre than the adjoining leases, and that there was no confiscation of the oil beneath the Woods et al. lease. No contention is here made on that ground. The sole question here presented is, therefore, whether the permit in question can be sustained on the ground that it was authorized to prevent waste. We have reached the conclusion that it was.

The record discloses that of the four wells on the Woods tract No. 1 was located 344 feet from its south line. The next well to the north of this well was its well No. 4, located 1,010 feet from well No. 1. Both of these wells were approximately offset by wells to the east and to the west on the adjoining tracts. The well here involved was to be located approximately equidistant between these two wells, being 503 feet north of Woods well No. 1 and 507 feet south of his well No. 4. At the proposed location, the distance between producing wells to the east on the Margay Oil Company lease, and those to the west on the Humble lease was approximately 1,400 feet between wells. The picture of the surrounding area thus presented is delineated by appellants as follows: Taking the location here involved as the center with a radius of approximately 500 feet, a circle is delineated including within its circumference an area of more than 18 acres without a producing well thereon. Using the same location as the center of a square with sides of 1,010 feet an area of 23.2 acres was shown to have no well thereon. It was likewise shown that using a north-south line through the proposed location as an axis, the nearest well thereto on the east of said location was approximately 600 feet, and to the west of the proposed well was approximately 812 feet. That is, that there existed in this area in which the proposed well was approximately in the center a rectangular area 1,010 feet wide and more than 1,400 feet long, containing more than 30 acres of land, on which no well was located. On, or immediately near, the boundaries of such rectangle, however, 10 surrounding wells were shown to have been drilled, three each on or near the north and south lines of such rectangular area; and two each on or near the east and west lines thereof. It is the contention of appellee that these ten wells as thus located will sufficiently drain the intervening area and recover the oil underneath it without waste and without an additional well in said area, even though

they are located in excess of 660 feet from each other.

The trial court evidently took the view that our holding originally stated in Sun Oil Co. v. Railroad Commission, 68 S.W.2d 609, 612, that the 660–330 feet spacing provisions of rule 37 in effect constituted an official finding by the Commission that "wells in closer proximity producing equally would tend to create waste" was determinative of the instant case. This same holding was reaffirmed in Atlantic Oil Production Co. v. Railroad Commission, Tex.Civ.App., 85 S.W.2d 655, and in Railroad Commission v. Marathon Oil Co., Tex.Civ.App., 89 S.W.2d 517, 519, writ refused; and quoted with approval by Judge Martin in Arkansas Fuel Oil Co. v. Reprimo Oil Co., Tex.Civ.App., 91 S.W.2d 381, 384. In each of the last above cited cases, however, the principal issue involved was that of confiscation of the applicant's property, and there had been no express finding by the Commission that waste would result unless the permit were granted. The trial court apparently took the view that under the above holding, since the permit here involved authorized a well less than 660 feet from producing wells both to the north and to the south of it, it would necessarily cause waste; and that since no confiscation of Woods' property was shown the permit was invalid.

The record discloses, however, that in the instant case, assuming that under the spacing provisions of rule 37, one well would adequately drain 10 acres surrounding it, and that wells in closer proximity than 660 feet of each other producing equally would tend to cause waste, there was evidence to show that the surrounding wells staggered as they were without the well in question,—that is 1,010 feet between wells north and south, and over 1,400 feet between wells east and west,— would not adequately drain the entire intervening area, but that in the vicinity of the well in question 125,000 barrels of oil would not be recovered without the well in question, which would be recovered by the drilling of such well. And further that if by the drilling of such well, together with offsets to the east and west thereof, waste be caused because of such exception to the spacing provisions of rule 37, still the waste so caused would not be as great as it would be if no well at all be drilled at this location. That being true, and assuming that waste will tend to be caused

by the granting of an exception to rule 37, there was clearly presented to the Commission the question of whether greater waste would result from the denial of the permit than from granting it. The Commission manifestly concluded, conceding that waste would result in either event, that less waste of the natural resources of the State would result from granting the permit than from refusing it. On this ground the order is sustainable without regard to the confiscation issue.

It has been repeatedly held that those acquiring mineral rights or estates in oil fields where rule 37 has become applicable obtain them subject to the enforcement of the conservation laws, and subject to the applicable provisions of rule 37. Ever since its first promulgation in 1919, rule 37 has provided that exceptions to the spacing provisions will be granted, the first of which exceptions has uniformly been where same may be necessary "in order to prevent waste  *  *  *." Manifestly this provision contemplated that situation might arise, independent of the property rights of adjacent lease owners, or of any issue of confiscation as between them, where exceptions would be necessary to conserve the oil and gas in a given field. And where that is true, the leaseholds and property owners must hold and enjoy their properties subject to the valid exercise of the police power over it. Brown v. Humble Oil & Ref. Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393. While, in many instances, the issue of whether, as between individual owners, the property of one is being confiscated by a permit granted to another may be one largely quasi judicial in nature, the question as to what may or may not constitute underground waste of oil is one particularly within the province of the Commission to determine. That issue is what it expressly passed upon in the instant case and the record discloses in our opinion that it had substantial evidence before it to sustain its order. That, as has been repeatedly stated, is the extent of the court's inquiry.

This conclusion has been reached independent of that portion of the expert witness Hudnall's testimony as to the wisdom of the spacing provisions of rule 37, and his opinion that wells drilled at lesser distances from each other than those prescribed by said rule, would recover more oil. We have arrived at our conclusion under the facts of the instant case predicated upon the efficacy of the spacing provisions of rule 37 as essential to the conservation of oil.

For the reasons stated, the judgment of the trial court canceling said permit is reversed, the injunction granted is dissolved, and judgment here rendered sustaining the validity of the permit here involved.

Reversed and rendered.

BLAIR, J., concurs in the result or judgment.

McCLENDON, C. J., reserves decision.