## RAILROAD COMMISSION et al. v. HUMBLE OIL & REFINING CO.

, No. 8771.

Court of Civil Appeals of Texas. Austin.
June 18, 1938.

Rehearing Denied Nov. 30, 1938.

Dissenting Opinion Jan. 3, 1939.

Wm. McCraw, Atty. Gen., and Chas. D. Rutta, Asst. Atty. Gen., for appellant Railroad Commission.

Wynne & Wynne and Wm. A. Wade, all of Longview, for appellant M. T. Flanagan.

R. E. Seagler and Rex G. Baker, both of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellee. ,

McCLENDON, Chief Justice.

This—a rule 37—case involves the validity of a Commission order granting to Flanagan a permit to drill an oil well upon a one acre tract in the East Texas field as an exception to the rule in order "to prevent confiscation of property." The case was formerly before this court in an appeal from an interlocutory order denying to the Humble a temporary injunction to prevent drilling the well pending trial upon the merits. This court set aside that order and

granted the temporary injunction. Humble Oil & Refining Co. v. Railroad Commission, Tex.Civ.App., 99 S.W.2d 1052, error ref.

It was adjudicated in that appeal that the one acre tract constituted a voluntary subdivision from the Della Johnston tract of 57½ acres, under lease to the Humble. The facts upon this issue are fully stated in the opinion upon the former appeal, and need not be repeated. See, also, the Nash Case, Nash v. Shell Pet. Co., Tex.Civ.App., 120 S.W.2d 522.

The present appeal is from a final judgment in a trial to the court without a jury, in which the Commission order was decreed void, and Flanagan was enjoined from drilling thereunder.

The controlling question here is whether the evidence was sufficient to support the trial court's judgment under the recent opinion in the Century Case (Railroad Commission v. Magnolia P. Co., 130 Tex. 484, 109 S.W.2d 967), as interpreted by this court in the Lasseter Case, Humble O. & R. Co. v. Lasseter, 120 S.W.2d 541.

■ The evidence conclusively showed that drilling the well not only was not necessary to prevent waste, but would tend to create waste. The issues therefore narrow down to whether the evidence was sufficient to overturn the presumption, implicit in the Commission order, that the well was necessary to prevent confiscation of property.

An application filed by Flanagan to drill on the one acre tract was heard before a special examiner on April 8, 1935, who recommended that the application be denied. This was done by Commission order of June 10, 1935. Thereafter Flanagan filed another application, with like hearing and like report. However, the Commission granted the application by order of February 10, 1936. This is the order involved in the instant and prior appeals. No evidence was offered in either of these hearings tending to show that drilling upon the tract was necessary to prevent either confiscation of property or waste.

In the trial below neither the Commission nor Flanagan offered any testimony, the only evidence being that offered by the Humble, and the only witness testifying being a petroleum geologist in its employ. The uncontradicted evidence showed the following:

The Della Johnston 57½ acres is practically rectangular in form, its N. and E. lines being respectively 915.2 and 1695.2 feet long. When the permit was granted it had eight producing wells, fairly well distributed over the entire area, and giving the tract a drilling density of 7.2 acres per well. Immediately to the east is the McFarland tract of 64 acres with nine wells, likewise fairly well distributed, giving that tract a like density of 7.2 acres to the well. The east line of the Della Johnston and the west line of the McFarland are coincident. The McFarland is, however, slightly narrower (east-west) than the Della Johnston, its width being 898.1 feet. Its additional acreage is made up by a narrow projection south on its E. side. The one acre tract is triangular in form. Its W. line is the common boundary between Della Johnston and McFarland. Its N. line extends E. from this line 131 feet and its remaining line joins the S. end of its W. line and the E. end of its N. line. Its S. corner is 630 feet N. of the S. end of the common Della Johnston-McFarland line. The one acre tract was originally a part of the McFarland but in 1912 it was purchased by the owner of the Della Johnston from the McFarland owner. The latter tract was also leased for oil and gas. Both leases were held by the Humble at the time of trial; but were deraigned from different fee owners. A map was in evidence which showed the location of all wells on the McFarland and Della Johnston, the area to the S. E. of the Della Johnston, the offset wells to the E. and N. of the McFarland, and the offset wells to the N., W. and S. of the Della Johnston. The map did not show the area beyond those offset wells to the N. E., N., N. W., W., and S. W. of the Della Johnston. It is around this deficiency in map showing and the geologist's testimony in connection therewith that the controversy on appeal in the main revolves.

The general qualifications of this geologist were conceded. He had been engaged by the Humble in the East Texas field since 1932, was familiar with the field generally and with this part of it in particular with regard to the various conditions having bearing upon the issues involved, such as sand quality, thickness, porosity, and permeability, the approximate total amount of oil and of recoverable oil per acre under the area, the effect of excessive drilling or production upon coning and water encroachment, etc. It is not necessary to detail the testimony of the witness in this regard. It suffices to state that it was ample to show his qualifications to give

the testimony he gave and was without contradiction.

■ We present in substance the evidence from two viewpoints—whether it established prima facie appellee's contentions that:

1. A well was not needed on the one acre tract in order to afford to the 58½-acre tract (Della Johnston plus the one acre tract taken as a whole) a reasonable opportunity to extract its fair share of the recoverable oil.

2. An additional well was not needed on any portion of the 58½-acre tract in order to afford it such opportunity.

That the evidence conclusively established the first contention is not open to serious question. The map showed the area to the E. of the Della Johnston well beyond the E. line of the McFarland. The evidence was to the effect that from that direction the Della Johnston was fully protected from every standpoint including density and drainage. It further showed that if there were drainage of the Della Johnston from any other direction than the east, a well on the one acre tract would not afford protection from such drainage, due to the distance of the one acre tract from the N., E. and S. lines of the Della Johnston. In other words, in order to afford protection from such drainage, the well would of necessity have to be located upon some portion of the 58½ acres other than the one acre tract. Moreover, it was shown that a well on the one acre tract would entirely upset the drilling pattern in this area and would result in a density situation that would enhance water encroachment and coning, and thus create waste. As stated, this evidence was uncontradicted. Under holdings of this court prior to the Century decision, this evidence would require setting aside the permit, independently of whether the 58½ acres, taken as a whole, might be entitled to a well at some other location in order to give it the requisite protection. To the writer it seems obvious that to permit a well upon a voluntary subdivision on the sole ground of confiscation prevention at a point where the well is not needed for that purpose and will upset the entire drilling pattern in the area and require further drilling by adjacent owners, cannot be supported under any fair or reasonable administration of rule 37 as a conservation measure. Such construction in effect destroys the voluntary subdivision rule which is essential to preservation of the spacing rule itself as a necessary preventative of circumvention of the rule. Manifestly the drilling of a well on the one acre tract, and as a consequence only a few feet from the McFarland line, would create a drainage situation as regards the McFarland, which would entitle its owners to drill sufficiently to offset this drainage; thereby in effect leaving the drainage situation from the east as regards the 58½ acres substantially the same as it was before. Thus the drilling on the one acre tract would leave the 58½ acres unprotected as before from undue drainage in other directions, with the right in its owners to additional drilling in order to obtain such protection.

■ However incongruous it may appear to uphold the permit to drill upon the one acre tract upon the sole ground that at some other point on the 58½-acre tract a well was needed in its then state of development to afford it protection to its fair share of the recoverable oil, although a well on the one acre tract would not afford much protection, such is the holding in the Century Case as that decision is interpreted by this court in the Lasseter Case. This necessitates consideration of the evidence from the viewpoint of the second proposition.

As already stated the map showing was full and complete as to the situation to the E. and S.E. of the 58½ acres. As to the contiguous area in other directions it showed all offset wells, but did not cover the area beyond this. We hold (Associate Justice BLAIR dissenting) that this deficiency was sufficiently met by the geologist's testimony, absent any evidence to the contrary. The substance of this testimony was that he had been in the employ of the Humble in its operations in the East Texas field since 1932, was familiar with the field in general and with the leases surrounding the Humble holdings. While he could not give the exact data regarding density on those adjacent leases, he did testify that it was substantially the same as that on the 58½-acre tract, and that this tract was fully protected and did not need another well to afford it such full protection. He offered on cross examination to furnish the data in this regard if it were desired, but this offer was not accepted. The following excerpt is fairly illustrative of his testimony upon this point:

"Q. Your testimony is that you do not know of your own knowledge what the density is of the offsetting leases to the

Humble-McFarland and the Humble-Della Johnston was on February 10, 1936? A. I know approximately what it was; I don't know exactly how many wells they had on those tracts.

"Q. Yes, sir. And, of course, you must know what the density was on each of those tracts in order to determine whether or not the Humble-McFarland or the Humble-Della Johnston either is adequately developed as of that date? A. It is our work to keep our leases up to where they are protected and we make a constant study of the leases adjacent to our property, and we know in a general way the density of all of those tracts. I cannot give you the exact figures, but I can get them for you if you have to have them.

"Q. But although you do not have that information here to present it to the Court, you say that it is your opinion that as of February 10, 1936, the development of the Humble-McFarland and Humble-Della Johnston was fully developed? A. At that time, that is true.

"Q. Do you mean by that, Mr. Sorenson, that in your opinion each of those respective Humble leases was able to produce the recoverable oil which was beneath each of those tracts, considering the offset leases and the drainage fact or which might have a part in influencing the development of each tract? A. If the conditions remain the same during the producing life, those leases were protected.

"Q. Now, you say they were protected. Do you mean your testimony is that the wells which were on the Humble-McFarland and the Humble-Johnston tracts as of February 10, 1936, and considering the density of all the surrounding tracts, which you are unable to give us, however,—that notwithstanding those wells that those two Humble leases would be able to recover the recoverable oil beneath those respective leases? A. They have fair opportunity to recover their oil during the producing life of the field, if the conditions remain the same.

"Q. In your opinion, with the conditions existing as they were on February 10, 1936, with the wells shown to have been drilled on the Humble-McFarland and Humble-Johnston leases, what percentage of the amount of oil in place beneath each of those tracts would be recovered during the producing life of those wells? A. I think you would recover a hundred per cent of the recoverable oil."

The subject matter of his testimony relating as it did to conditions in the East Texas oil field, as to which all necessary data was readily accessible in the Commission records and files, and being of such character that if not true it might readily have been contradicted, clearly, we think, sufficed to a prima facie showing that an additional well was not needed to protect the 58½ acres, thereby overcoming the presumption of validity (rebuttable, as here, upon direct attack) of the Commission's order. The applicable rule of evidence is well settled in this state. It is thus expressed by Judge Gill in Pullman Co. v. Nelson, 22 Tex.Civ.App. 223, 54 S.W. 624, 626: "When the proof tends to establish a fact, and at the same time discloses that it is within the power and to the interest of the opposing party to disprove it, if false, the silence of the opposing party not only strengthens the probative force of the affirmative proof, but of itself is clothed with a certain probative force." See, also, 17 Tex.Jur., p. 306, Sec. 87, for additional citations to the same effect.

■ ■ Error is assigned upon refusal of the trial court to permit appellants to show that subsequently to the order granting the permit in question the Humble had applied for and obtained permits to drill three additional wells on the Della Johnston as exceptions to rule 37. This ruling was clearly correct. As was said by this court in Railroad Commission v. Gulf P. Co., Tex.Civ. App., 115 S.W.2d 505, 508: "It is now settled, however, in testing the validity of such a permit, on an appeal to the court, the court in doing so is confined to the conditions as they existed at the time the commission acted. Railroad Commission v. Magnolia Petroleum Co. [130 Tex. 484] 109 S.W.2d 967; Magnolia Petroleum Co. v. New Process Prod. Co., [129 Tex. 617] 104 S.W.2d 1106."

The trial court's judgment is affirmed.

Affirmed.

BLAIR, Justice (dissenting).

The writer dissents from the majority judgment striking down the prima facie and presumptive valid permit of the Commission to drill the oil well in question. Such permit order is not only made "prima facie valid" by statute (Arts. 6042 and 6049c, Sec. 8, Vernon's Ann.Civ.St.); but "being an official act, would be presumptively valid without a statute." Railroad Comm. v. Magnolia Pet. Co., 130 Tex. 484, 109 S.W.2d

967, 972. The party challenging the permit order has the burden of showing by clear and satisfactory evidence leaving no doubt in the judicial mind, that the well was not necessary to prevent physical waste of oil nor to prevent confiscation of permittee's property. And in reviewing the permit order the courts are not bound by any reason given by the Commission for the order, provided another valid ground or basis is shown for it; and the prima facie order and findings of the Commission to sustain it are not reviewable on the statutory appeal unless they are unsupported by any substantial evidence, since they have at least as high standing in regard to finality as a verdict or finding of a jury. To hold otherwise would simply permit one challenging the permit order to have two trials on the facts, one by experts, the Commission, presumed to be skilled in the oil industry; and the second by a jury of laymen, who, upon conflicting evidence, would be permitted to substitute themselves for the Commission. Humble Oil & Ref. Co. v. R. R. Comm., Tex.Civ.App., 112 S.W.2d 222, error dismissed.

But notwithstanding the prima facie and presumptive validity of the permit order in question, the majority view has struck it down upon the mere unsupported opinion of a geologist employed as an expert witness by Humble Company, both with respect to whether the well was necessary to prevent physical waste of oil and to prevent confiscation of permittee's property.

Without discussing the testimony of the geologist, the majority dismiss the issue with the statement that "the evidence conclusively showed that the drilling of this well was not only not necessary to prevent waste, but would tend to create waste." This was merely the opinion of the geologist, which was unsupported by any factual data, and was predicated upon his own view and interpretation of the spacing rule as a fact finding that the wells drilled closer than the prescribed distances would cause waste; which view the majority still adhere to notwithstanding it was expressly overruled by the Supreme Court in the Magnolia Case, 130 Tex. 484, 109 S.W.2d 967. In reasoning to his point or opinion, the geologist explained that all oil wells would tend to cause intrusion of water into the oil producing sands and thus tend to cause waste by dissipation of the reservoir pressure. His opinion was therefore predicated upon the fact that any well drilled into the oil producing strata underlaid with water will cause intrusion of the water to replace the space left by the oil, and proved nothing. Of course, the operation of all wells consumes reservoir energy, but that is its only useful purpose. So, the opinion of this expert merely begs the question, because without the consumption of reservoir energy no oil would be produced; and manifestly the opinion of this witness, unsupported by any factual data, will not suffice to set aside the prima facie and presumptive valid order granting the permit to drill the well in question. And the expert's opinion is in direct conflict with the repeated findings of fact by the Commission with regard to drilling more wells to prevent physical waste of oil.

By its order of August 26, 1935, the Commission expressly found upon evidence adduced at its many hearings and from its actual experience, and through its experts continuously employed in the administration of the rule, that the closer wells are drilled the greater will be the ultimate recovery of oil and gas from any area so drilled, provided the wells produce equally; and closer spacing is accomplished through the application of the exception to the general rule to prevent waste, or to prevent confiscation. If more oil will be recovered from denser drilling, then failure to so drill will necessarily result in waste of oil and gas left in the ground; and in consequence will also result in confiscation of the oil through failure to enforce the exceptions to the rule so as to recover the greatest amount of oil under any given tract of land or area.

The Commission has developed the East Texas Oil Field in accordance with its aforementioned findings of fact and its interpretation of its own rule to such an extent that only a few of the approximately 25,000 wells are spaced in accordance with the general distances prescribed by the rule. Of these facts and interpretation by the Commission the oil industry may take notice and contract accordingly. That is, if those engaged in the industry are required to take notice of Rule 37 in making and developing oil leases, then equity and fair dealing require that they may also take notice of the interpretation placed on the rule by the Commission and the manner of its enforcement of the rule and the exceptions. Such is in accord with the decision of the Supreme Court in the New Process Case, 129 Tex. 617, 104 S.W.2d 1106, wherein it is held that where vast property rights have become vested by orders entered by the

Commission under the conservation laws, the court on review of such orders will follow the construction adopted by the Commission.

The writer's views with respect to the majority interpretation of Rule 37 are expressed by dissenting opinions in the Magnolia Case, Tex.Civ.App., 105 S.W.2d 792; the Gulf Case, Tex.Civ.App., 115 S.W.2d 508, writ granted on the dissent; the Magnolia Cases, Tex.Civ.App., 120 S.W.2d 548, 550; and the Tide Water Associated Oil Co. v. Railroad Comm., Tex.Civ.App., 120 S. W.2d 544, 548, which are here referred to.

The administration of the oil and gas conservation laws of Texas and the findings of the Railroad Commission with respect thereto are matters exclusively within the prerogative of the Railroad Commission. The resolving of divergent conclusions arrived at from conflicting opinions and theories of experts in this respect are issues likewise solely within the Commission's jurisdiction. Railroad Comm. v. Royal Pet. Co., Tex.Civ.App., 93 S.W.2d 761, error dis. This was recognized in Woods et al. v. Humble Oil & Ref. Co., 120 S.W.2d 464, wherein this court in an opinion written by Associate Justice Baugh stated [page 466]: "While, in many instances, the issue of whether, as between individual owners, the property of one is being confiscated by a permit granted to another may be one largely quasi judicial in nature, the question as to what may or may not constitute underground waste of oil is one particularly within the province of the Commission to determine."

On the issue of whether the well in question was necessary to prevent confiscation of Flanagan's property rights in the 1-acre tract, the majority recognize the holding of the Supreme Court in the Magnolia Case, 130 Tex. 484, 109 S.W.2d 967, to the effect that the prima facie and presumptive validity of the permit order to drill the well is not overcome merely by proof that the 1-acre tract on which the well was granted had been voluntarily subdivided from the larger Della. Johnston 58½-acre tract. However, the majority in effect hold that the burden rested upon Flanagan to show that the 1-acre tract, when considered as a part of the 58½-acre tract, was entitled to the well in order to afford to the owners an equal opportunity to recover their fair share of oil under the entire tract. Such holding is manifest from an analysis of the testimony of the Humble's geologist, and from the decision cited and quoted from in aid of such testimony.

The Humble's geologist testified that in his opinion the entire Della Johnston 58½-acre tract was fully developed and adequately protected from drainage; but he admitted, upon cross-examination, that he did not know the densities of all of the leases adjoining the original Della Johnston 58½-acre tract, nor had he prepared or even seen a map showing the density of drilling within an area eight times that of the 58½-acre tract, either in circular or rectangular form, and had made no calculations whatsoever of the density of an area eight times that of the Della Johnston 58½-acre tract. Humble's plat did not show these densities, merely showing the offset wells to the Humble-Della Johnston lease and to the Humble-McFarland lease.

The geologist also testified that he kept up "in a general way" with the densities of all leases adjoining the Humble leases in the East Texas Field, and "in a general way" knew the densities of such leases, and was of the opinion that the original Della Johnston 58½-acre tract and all adjoining tracts thereto were approximately of the same density. This obviously constitutes merely the estimate or conjectural opinion of a witness upon matters of fact readily susceptible of exact ascertainment and specific proof; therefore, such testimony, even in the absence of objection thereto, is wholly incompetent evidence which must be disregarded by the courts. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533.

The method commonly employed by the Railroad Commission to determine the necessity of a tract for additional development to prevent confiscation of property or to prevent drainage is to compare the density of drilling of the tract in question with the densities of drilling of all adjoining leases thereto, and with the density of drilling within an area eight times that of the tract in question, using both the circular and rectangular eight times area method of comparison. The order granting the well to accomplish such purposes is prima facie and presumptively valid, and the above detailed testimony of Humble in this suit is clearly insufficient to overcome the presumptive validity of the permit order of the Commission authorizing Flanagan to drill and operate the well to prevent confiscation of property and to prevent drainage thereof.

The majority hold that the testimony of the witness is sufficient to overcome the prima facie validity of the permit order in suit, in absence of any evidence to the contrary introduced by the Commission and Flanagan. The effect of this holding is to remove from Humble the burden to overcome the presumptive validity of the permit order in suit, and to place upon the. Commission and Flanagan the burden of affirmatively sustaining the validity and reasonableness of the Commission's order.

The majority seek to apply to this case the rule of evidence quoted in Pullman Co. v. Nelson, 22 Tex.Civ.App. 223, 54 S.W. 624, as follows [page 626]: "When the proof tends to establish a fact, and at the same time discloses that it is within the power and to the interest of the opposing party to disprove it if false, the silence of the opposing party not only strengthens the probative force of the affirmative proof, but of itself is clothed with a certain probative force."

The quoted rule is clearly inapplicable in this case, because by statute the burden of proof rests upon plaintiff to overcome the presumptive validity of the order of the Commission in question, by clearly showing its invalidity, and the quoted rule is not applicable where the burden of persuasion rests upon the party seeking to invoke the rule. Wichita Falls, etc., Ry. v. Emberlin, Tex.Civ.App., 255 S.W. 796; 17 Tex.Jur. 305; McCormick & Ray, Texas Law of Evidence, Sec. 59, p. 110. Nor, in any event, is the quoted rule of evidence applicable until plaintiff has proved a prima facie case. Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Texas Unity Oil Co. v. Dolman, Tex.Civ.App., 8 S.W.2d 815, error dis.; Galveston, H. & S. A. Ry. Co. v. Landeros, Tex.Civ.App., 264 S.W. 524; Texas Co. v. Chas. Clark & Co., Tex.Civ. App., 182 S.W. 351, error dis.; Davis v. Etter & Curtis, Tex.Civ.App., 243 S.W. 603; St. Louis, etc., Ry. v. West, Tex.Civ. App., 174 S.W. 287, error ref.; Gayle v. Perryman, 6 Tex.Civ.App. 20, 24 S.W. 850; 17 Tex.Jur. 307; McCormick & Ray, Texas Law of Evidence, Sec. 59, p. 111. Nor is the quoted rule of evidence applicable where, as here, the unproduced evidence is equally available to both parties. Reynolds v. International & G. N. R. Co., 38 Tex.Civ. App. 273, 85 S.W. 323, error ref.; Smith v. Triplett, Tex.Civ.App., 83 S.W.2d 1104; Davis v. Castile, Tex.Com.App., 257 S.W. 870; Hines v. Kelley, Tex.Com.App., 252 S.W. 1033; 17 Tex.Jur., 305, Sec. 86; McCormick & Ray, Texas Law of Evidence, Sec. 59, p. 110.