## SCHUMACHER et al. v. MISSOURI PAC. TRANSP. CO.

### No. 10265.

Court of Civil Appeals of Texas. San Antonio.

March 16, 1938.

Rehearing Denied May 25, 1938.

Gordon Griffin, of Weslaco, and J. E. Leslie, of McAllen, for appellants.

Strickland, Ewers & Wilkins, R. D. Cox, Jr., and Orville I. Cox, all of Mission, for appellees.

SMITH, Chief Justice.

Mary Wolff Schumacher, for herself and other heirs, brought this suit for the alleged wrongful death of her husband occasioned by a collision between his car and a motor bus belonging to Missouri Pacific Transportation Company, on State Highway 66, between Edinburg and Pharr, in Hidalgo County, on September 12, 1936. Schumacher was driving alone in his car, a "1929 model A Ford Sedan," and the motor bus, driven by T. B. Lemp, was carrying eighteen passengers, on its regular run. The Schumachers sued both the Transportation Company and Lemp. The trial judge directed a verdict in favor of

those defendants, and from the resulting adverse judgment the Schumachers have appealed. The parties will be designated as plaintiffs and defendants, as in the court below.

Lemp, the driver, was the only eye-witness to the tragedy who testified upon the trial. He was called by plaintiffs as a presumably hostile witness, as provided in amended article 3769c, Vernon's Civ.Stats., Acts 1931, 42d Leg. p. 307, c. 181, § 1. None of the eighteen passengers was called as a witness by either party, and the only other testimony adduced, besides that of Lemp, was from parties who arrived on the scene after the accident. Their testimony was limited to their observation of the physical facts disclosed by the marks and wreckage on the ground, although one witness repeated statements made to him by Lemp concerning the accident, but those repeated statements raised no conflict in the evidence.

■ Defendants contend that the failure of plaintiffs to produce any of the eighteen passengers as witnesses raises the presumption that had the testimony of those witnesses been adduced it would have disproven, or at least failed to aid, plaintiffs' charges of negligence against defendants. To this we cannot agree. Under the peculiar facts of the case—the victim, upon the one hand, being in a dying condition and having no opportunity to interview or even get and preserve the names of the witnesses, and the defendants, upon the other hand, having and retaining the custody of the witnesses and having every opportunity to interview and obtain statements from them as to what their testimony would be—we think the presumption, if any arises, would be against defendants. This presumption would not ripen, if at all, however, unless and until plaintiffs first made a prima facie case against defendants, which would require evidence to rebut it.

The highway on which the collision occurred runs substantially north and south, and consists of a paved center eighteen feet wide, between twenty-foot shoulders, which are practically level and firmly sodded with Bermuda grass. The way was level and straight, with nothing to obstruct the view of either party as he approached the other. The accident occurred at about 6:40 p. m. in full daylight. The bus was traveling south, the Ford north.

■ The collision occurred just east of the center line of the pavement. The bus was on the east (its wrong) side of the center. The Ford was moving from the west (its wrong) side and had gotten back just over the center line, when the collision occurred. The entire front end of the Ford was crushed, the car rebounded from the impact and came to rest at the west edge of the paving. Schumacher was thrown out of the Ford and to the pavement, was immediately removed to a hospital at McAllen, where he died an hour later. The impact was against the right front part of the bus, its right front tire blew out, and the wheel collapsed. The bus swerved on across the paving, circled down the east shoulder to a stop on the east edge of the paving, 132 feet from the place of the collision. These facts were conclusively established by the testimony of the bus driver, Lemp, when considered in connection with the corroborative testimony of others who came on the scene after the accident. Those facts, as a matter of course, were not sufficient to warrant a jury finding of negligence against either party, or a finding of proximate cause. We must therefore look further in search of a jury question, if any there was. If none is found in the remaining testimony, when taken as true if favorable to plaintiffs, and disregarded if adverse to them, then the trial judge did not err in directing a verdict for defendants; otherwise, he did err.

The bus in question weighed 13,000 pounds, when empty, and, as stated, was carrying eighteen persons, including one child, when the accident occurred. The only other evidence, in addition to that embraced in the foregoing statement, was the testimony of defendant, Lemp, the driver of the bus. Lemp had had ten years' experience in driving trucks and busses, and was presumably skilled in that work. He testified, in substance, that he was ten minutes late on his schedule when he left Edinburg a few minutes before the accident happened; that when he first saw the approaching Ford it was about half a mile distant, traveling on the east (its right) side of the highway; that when the Ford got within about 125 feet of the bus, it turned west across the roadway, as if to enter a private driveway, well marked by high stone pillars, which formed an entrance into the adjacent premises of a local resident; that "when he (Schumacher) got to the driveway, he straightened out with his left hind wheels off the pavement," and moved north directly in the path of the oncoming bus; that "I was

coming this way (facing the oncoming Ford) and I cut this way (towards the other (east) side of the highway) in order to miss him, and he cut back," east, to his right, and into the right front wheel and door of the bus; that the witness had "cut (east) across the pavement" out of the path of the oncoming Ford, which "kept on" up its left (west) side of the highway, "until it got, I don't know how far, I did not have time to judge the distance or anything, the thing happened so quick, but as my car was coming (east) across the pavement, this car (Ford) cut across (east) and cut right into the back of the front door" of the bus.

Now, as has been stated, if there is any evidence to support any jury findings upon any issue of negligence, it must be found in the testimony of Lemp, just set out. It is true the jury could reject his *uncorroborated* testimony as to any given fact, but it could not substitute for it other or different testimony, *as coming from him,* for the purpose of aiding a finding for plaintiffs. For the purpose of this inquiry, that testimony must be accepted as true as far as it aids plaintiffs' case, but, if not corroborated, may be rejected, but not substituted, by putting in his mouth testimony he did not utter. Upon that formula we will now consider Lemp's testimony.

We are of the opinion that if Lemp's testimony be given effect it raised no issue except that of Schumacher's negligence in maneuvering his car back and forth across the highway in the face of the approaching bus, unless, indeed, it also raised the issue of discovered peril upon the part of defendants, to be discussed later. If we disregard Lemp's testimony, as an interested party, then surely it leaves nothing in the case to support a material issue of fact, because no other evidence or circumstance in the case affords anything better than the purest surmise or conjecture upon the conduct of the parties leading up to and resulting in the collision. We cannot adopt Lemp's testimony wherein, if true, it clearly establishes Schumacher's negligence, because in testing the ruling of the court in directing a verdict against plaintiffs we can assume as true only that evidence which tends to support the plaintiffs' case, and cannot assume the truth of testimony adverse to plaintiffs. If, however, the record conclusively established Schumacher's contributory negligence, as defendants contend, then we must, nevertheless, consider the question of discovered peril, which, if found against defendants, would defeat the defense of contributory negligence, as well as afford plaintiffs an independent ground of recovery.

Did the testimony of Lemp raise the issue of discovered peril? He testified, in brief, that he saw Schumacher turn west across the highway, in front of the oncoming bus, as if to enter an open driveway on the west side of the highway; that this movement by Schumacher began when the latter was 125 feet in front of the bus, when both vehicles were traveling towards each other at the rate of 35 miles per hour; that when Schumacher got across the highway, instead of going on into the driveway at hand, as Lemp assumed he would do, he unexpectedly turned north moving forward, on his wrong side of the road, directly in the path of the oncoming bus, which was traveling on its right side of the road; that in this predicament, induced by Schumacher's strange and unexpected maneuvers, Lemp swerved his bus to the left and out of the path of Schumacher, whereupon the latter suddenly swung his car out of its then course, and back across the highway to the east, intercepting and colliding with the bus. The applicable rule is that

"One can only recover under the doctrine of discovered peril if he proves by a preponderance of the evidence: (1) That the driver of the offending car actually discovered the plaintiff's position of danger and realized, * * * that the latter could not or might not extricate himself from the dangerous situation; (2) that the driver made such discovery in time to avoid the collision by the use of all the means at his command, with due regard to the safety of himself and others occupying the vehicle; (3) that he negligently failed to use such means; and (4) that such failure was the proximate cause of the injuries complained of.

"A motorist has the burden, under a count charging subsequent negligence or liability under the last clear chance doctrine, of proving his charges.

"The doctrine of last clear chance must be predicated on facts. It cannot be grounded upon pyramided presumptions, and the burden of proving that the injury could have been avoided by the party who inflicted it after the peril was discovered, or could have been discovered, rests upon

him who asserts that proposition." 9 Blashfield's Cyc. Automobile Law, Permanent Ed., p. 447, § 6131.

We are unable to escape the conviction that plaintiffs did not make a case of discovered peril under the rule. The only relevant testimony in the case is that of Lemp. The only inference deducible from his testimony is that Schumacher's peril first arose when he turned from his course to the driveway and moved up the wrong side of the road in the path of the bus. Lemp obviated that danger by turning the bus out of Schumacher's course, which relieved the latter of his peril so long as he kept his then course; that Schumacher then unexpectedly left that course and moved back into a new position of peril, and his injury resulted almost instantly. There is no evidence from which a jury could even conjecture the distances which separated the parties at any given time or point in the sequence of events, or within what space of time or distance the 13,000 pound bus, loaded with eighteen people, could have been stopped, or its speed appreciably reduced, or the collision avoided. Lemp testified that after he pulled over and out of Schumacher's course, Schumacher "cut across and right into" the bus; that this happened so quickly that he "did not have time to judge the distances, or anything;" that he did not know how far Schumacher had gone up the west side before turning back across the road towards the then course of the bus. All these matters of distance and time, and opportunity afforded Lemp to avoid the collision with the means at hand, were left to pure conjecture, to which juries and courts may not resort in settling questions of fact and law.

We have written at this length and in this detail more in deference to the earnest presentation, than to the meager record in the case.

The judgment is affirmed.

### On Motion for Rehearing

It was stated in the original opinion that the uncorroborated testimony of defendant Lemp, insofar as it was adverse to plaintiffs, "may be rejected, but not substituted." The language may be inept and confusing, if not inaccurate. In this motion for rehearing plaintiffs construe it to mean that Lemp's testimony may not be *rebutted* by the testimony of others, which, of course, was not intended. The language was intended to express the idea that while the uncorroborated testimony of Lemp, a party defendant, may be rejected in toto, it may not be substituted by attributing to him testimony he did not give. We have modified the questioned phrase to meet plaintiffs' objection.

Plaintiffs assume in their motion that this Court gave effect, as against them, to uncorroborated testimony of the defendant Lemp, and based affirmance thereon. In that, too, plaintiffs misunderstand the position of this Court. For, in the original opinion, this Court gave no effect, as against plaintiffs, to any uncorroborated testimony of Lemp. We simply set out his testimony, and held that it did not raise the issue of discovered peril. In truth, there is no conflict between the material testimony of Lemp and the other evidence in the case, most of which is found in the testimony of plaintiffs' chief witness, Earl Hersh, a highway patrolman, who arrived at the scene shortly after the accident, and testified very clearly and at length from the physical facts disclosed at the time.

Plaintiffs' motion will be overruled.