James V. DILL et ux., Appellants,

v.

HOLT'S SPORTING GOODS STORE,
Appellee.

No. 13330.

Court of Civil Appeals of Texas.

Houston.

April 23, 1959.

Miller, McClure, Lucas & Wright, Ralph K. Miller, James H. Wright, Houston, for appellants.

Richard B. Miller, Robert C. Winkelman, Houston, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was brought by appellants, James V. Dill and wife, against W. A. Holt Company, to recover damages resulting from alleged injuries suffered by Mrs. Dill when she fell down the stairway in Holt's Sporting Goods Store in Houston. At the conclusion of appellants' testimony, the Trial Court, upon motion of appellee, withdrew the case from the jury and rendered judgment that appellants take nothing. From the Court's judgment appellants have perfected their appeal.

Appellants' Point of error asserts that the Court erred in withdrawing the case from the jury and rendering judgment that appellants take nothing, because the evidence raised issues of fact for the jury as to the presence of a slippery substance on the stairway, the negligence of appellee in causing such condition, and such negligence being the proximate cause of appellants' damages.

It thus becomes necessary to examine the testimony in order to determine whether the Trial Court erred in withdrawing the case from the jury and rendering judgment against appellants.

Mrs. Dill testified she arrived at appellee's store around just before 9:30 a. m.; that the sidewalk between the curb and the store was dry; that she walked to the rear of the store and then up the stairway in question, which consisted of eleven steps, to discuss a bill with appellee's credit manager whose office was on the mezzanine floor; that the store floor did not look like it had been recently waxed; that the stairway was well lighted and the condition of the stairway was perfectly open and obvious to her; that as she walked up the stairway she was looking at the stairs where she was stepping and the stairway appeared to be clean; she supposed it looked like it had been recently cleaned; she did not see any foreign substance on the stairway and did not remember stepping in anything that seemed slippery in going up the stairway; that she remained in Mr. Vykykal's office 9 to 12 minutes and then proceeded down the stairway; that she did not remember seeing any trash or debris on the stairway, and did not see any kind of oily substance; that in going up the stairway she did not use the handrail, but coming down she did; that when she was going down the stairs and trying to be cautious, as she got "middleways of the fourth or fifth step" her right foot slipped on something slippery, a slippery substance, a greasy substance, and she slipped and fell on her back; that she felt something slippery under her foot; that her foot hit something slippery and she fell; that she did not look at the steps after she fell and at no time saw any foreign substance of any kind thereon.

At the trial appellants introduced in evidence a light short coat which Mrs. Dill testified she was wearing at the time of the accident. It was pointed out that there was a greasy spot about the center of the back of the coat and also on the underside of the left sleeve of the coat, such spots being irregular but approximately several inches in diameter. She further testified that the coat had not been cleaned since the accident and that the spots were not on the coat at the time she entered appellee's store; that later, on the afternoon of the day of the accident, she noticed some kind of a waxy or oily or greasy substance on her right shoe which she said smelt like wax. In her deposition she testified that the spots on the coat looked like an oily substance but smelt waxy. It was not shown whether the spots might have gotten on the coat while Mrs. Dill was in the ambulance that took her to the hospital, or while she was in the emergency or x-ray rooms of the hospital. There were apparently more than two spots on the coat, but appellants seemed to rely only on the two spots above mentioned as corroborative of their contention.

Robert Dill, brother of appellant, James V. Dill, testified that he and Mrs. Dill arrived at the store between 9 and 9:15 a. m.; that after taking Mrs. Dill to the store, he sat in the car which he had parked for about an hour; that he then went to the store and looked around to see if he could find Mrs. Dill, and, failing to find her on the first floor, he went up the stairway where the offices were; that after he had gotten about midway up the stairway and was lifting his right foot above his left foot, it slipped on some oily substance and slid back onto the step just below; that he hesitated and looked down to see what had happened and noticed on the stairway an oily substance which looked like gun oil; that it was dirty and streaky and irregular; that there were two places where the oil was on the step and one spot was separated from the other, and the oil appeared to be tracked; that he had not seen the oily substance before he stepped into it, but after looking directly down he could see it when he looked right at it; that he did not report the incident or the condition of the step to anyone in the store; that later in the evening of the day the accident occurred he went to the hospital and looked at the coat Mrs. Dill had worn and saw the spots that were on it; that the oil he saw on the coat appeared to be the same type of oil he saw on the stairway that morning;

that he also looked at his own shoe and saw some oil on the bottom of his right shoe.

Mr. Cott, the office manager of the store, testified that he had arrived at the store about 8 o'clock in the morning and had gone up to his office on the mezzanine floor; that by force of habit he observed the floor, the floor of the steps and the office to see if the porter had everything clean; that he saw nothing on any of the steps and that the stairway was clean; that the porter who generally cleaned the stairway was sick; that it was the practice in such case to redelegate the work to other porters; that he knew of his own knowledge that the floor had been swept the morning of the accident; that no compound had been put on the floors for some 10 or 11 days prior to the accident; that he did not observe any foreign substance of any kind on the stairway or any kind of slippery or slick substance thereon; that he had been up and down the stairway several times before Mrs. Dill fell; that when Mrs. Dill fell he went down the stairway and did not observe anything on the stairway that would cause a person to slip; that no cleaning fluid or oil was kept on the mezzanine; that there was also a lay-away department on the mezzanine where packages were sometimes kept or stored; and that if any gun was placed in storage in the lay-away on the mezzanine it would be wrapped in paper.

Accepting the evidence and the inferences therefrom in their aspects most favorable to appellants' case, and discarding all contrary evidence and inferences, as we must do, we have concluded that there was some evidence that oil or some greasy substance was on the stairway at the time Mrs. Dill fell. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60.

There is, however, a total absence of evidence as to how the oil or greasy or waxy substance got on the stairway, or who placed or left it there, or how long it had remained there. Appellants failed to show that appellee had any notice that there was any foreign substance of any kind on the stairway, or that it was present on the stairway for any appreciable length of time or for such length of time that appellee, in the exercise of ordinary care, would have discovered its presence. Their case is predicated upon the sole contention that there had been no customers in the store or on the stairway prior to the accident, and that it therefore necessarily follows that appellee was responsible for the presence of the slippery substance on the step. Mrs. Dill did not testify at all with respect to customers.

As evidence of their contention that Mrs. Dill was the first customer in the store that morning, appellants rely on the time of her arrival at the store and the testimony of Mr. Cott with respect to customers. The testimony of Robert Dill placed Mrs. Dill's arrival at the store between 9 and 9:15 a. m. Mrs. Dill fixed the time at just before 9:30 a. m. The hospital record which was introduced in evidence shows that Mrs. Dill was admitted to the emergency room of the hospital at 10:30 a. m. and that the time of the accident was approximately 10 a. m. The evidence is undisputed that the store was open to the public at 9 a. m. on the day of the accident. The ground floor of the store was devoted primarily to the display and sale of merchandise. On the mezzanine were located: the Credit Office, which was occupied by J. M. Cott and Bernard Vykykal; the Bookkeeping Department; the office of the General Manager; and the Lay-away Department. The mezzanine was open to and used by customers for the cashing of checks, making payments on accounts and similar matters, and was not reserved to the employees of the store. According to Mrs. Dill's testimony the occurrence of the accident was approximately between 9:39 a. m. and 9:42 a. m., since she was in Mr. Vykykal's office on the mezzanine from 9 to 12 minutes. Mr. Cott testified that Mrs. Dill arrived at the store between 9:30 and 10:30 a. m. Calculating the time

based on the testimony of Robert Dill, the accident could have occurred between 9:09 and 9:27 a. m., not taking into account such time as Mrs. Dill spent in going to the rear of the store and to the Credit Office.

Mr. Cott testified that he arrived at the store about 8 a. m. and immediately went to his office where he started making a report that he made every morning to the home office at Waco; that between 8:30 and 9 a. m. he generally checked the employees, opened the safe and looked to see whether the employees were counting the money and doing their part of the work in the office. At about 8:30 he went down on the first floor to the restroom and then returned to the office "possibly around a quarter to Nine o'clock"; that he couldn't say whether he opened the store that morning; that he was in the office, which he shared with Mr. Vykykal, when Mrs. Dill arrived; that he had completed a few of his duties and it must have been between 9:30 and 10:30; that he was in the office during the time Mrs. Dill was there with Vykykal; that "you can't see anybody going or coming down the stairs until they get to the top and then you can only see their head when they reach the top." The pictures introduced indicate Mr. Cott could not see the stairway from his office; though he might, if he were looking, see persons on the landing at the top of the stairway. There was a maximum of eight employees who worked on the mezzanine floor of the store. Mr. Cott further testified that he was in his office most of the morning, except the time he had "already described as being out." There is no evidence showing he was out of his office between "possibly around a quarter to Nine o'clock" and the time the accident occurred.

We quote the following testimony given by Mr. Cott:

"Q. Was she the first customer of Holts to use that stairs that morning? A. I do not know.

"Q. Can you tell the jury of your own knowledge whether or not any other customer used the stairs that morning before Mrs. Dill fell? A. No, sir, I can't say, but: no, sir, I can't say positively we had any other customers, but in the ordinary trade of business we would have probably had a dozen.

\* \* \* \* \* \*

"Q. But you can't tell the jury, can you, whether or not there were any customers who had used that stairway prior to the time Mrs. Dill had that morning of January 18th? A. No, sir.

"Q. Did you actually see Mrs. Dill the morning of this accident before it occurred? A. I did.

"Q. And where did you see her? A. Sitting at Mr. Vykykal's desk.

"Q. That is in the office shared by you and Mr. Vykykal? A. Yes, sir."

When Mr. Cott heard Mrs. Dill fall, he went down to where she lay at the foot of the steps. There were two or three employees who were near Mrs. Dill. Mr. Cott was then asked:

"Q. Mr. Cott, tell the jury, if you will, from the time you were standing at the head of the stairs there up until the time you left where Mrs. Dill was lying there, after being there for some three minutes, if you saw a single, solitary customer in that store? A. I do not recall seeing any customers.

"Q. The only people you saw around where Mrs. Dill was lying there, were the employees of the Holts Sporting Goods Store? A. That is right."

He was again asked:

"Q. State whether or not at the time you came down the stairway there were any customers around, that is, around where Mrs. Dill was? A. To my knowledge, there was not.

\* \* \* \* \* \*

"Q. State whether or not at the time this accident happened there were customers in the store? A. To my knowledge, there was not any customers."

The testimony of Mr. Cott is to the effect that he did not know whether there were any customers in the store before Mrs. Dill arrived, and that to his knowledge there were not any customers in the store at the time the accident happened. It is immaterial whether there were any customers in the store at the time of the accident. On their theory of the case, it rested upon appellants to introduce some evidence more than a mere scintilla, to the effect that there were no customers in the store with access to the stairway, prior to the time Mrs. Dill fell. The testimony of Mr. Cott shows that for a considerable part of the time between the hour he arrived that morning and the time of the accident he was in his office and, therefore, not in a position to know whether there were or were not any customers in the store prior to the time Mrs. Dill arrived or during the time she was in the Credit Office. We think, therefore, that appellants have failed to meet the burden of proving at least by some evidence of probative force facts from which an inference could be drawn that there were no customers in the store prior to Mrs. Dill's arrival or during the time she was in the Credit Office, and that the oily or greasy substance on the stairway must have been placed or left there by some employee. There was testimony that the store had some 42 employees and was in down-town Houston. It would seem rather improbable that there were no other customers in the store. Moreover, there was no evidence that any of appellee's employees had any more reason to carry oil or some greasy substance up the stairway than would some customer. One of the pictures introduced shows that the drinking fountain was near the stairway and the counter of the repair shop (but not the entrance) was also not far from the stairway. We think that it is purely a matter of speculation whether the alleged oily or greasy substance was placed or left on the stairway by an employee or by a customer.

In Houston, E. & W. T. R. Co. v. Boone, 1912, 105 Tex. 188, 146 S.W. 533, 535, the Court quoted with approval from Thompson's Commentaries on the Law of Negligence, vol. 6, sec. 7863, as follows:

"'\* \* \* a verdict for negligence may be supported by inference; but *such inference must be a logical, probable, and reasonable deduction from proved or conceded facts.* Negligence cannot be a mere matter of conjecture, but must be *fairly inferable from the evidence.*'"

■ After a careful examination of the evidence, viewed most favorably to the appellants, we have concluded that the District Court properly withdrew the case from the jury and rendered judgment against the appellants. We think it unnecessary to discuss whether or not the condition of the stairs was as easily perceptible to Mrs. Dill as to the appellee or its employees, in view of our holding that there is no evidence in the case to show that appellee put the foreign substance on the steps, or knew that it was on the stairway, or that it had been on the stairway for such period of time, that in the exercise of ordinary care the appellee would have discovered it and removed it. We note, however, that Mrs. Dill was asked the following question:

"Q. And if there was something there on the stairway it would be just as obvious to you as anybody else, certainly in view of the fact that you were in a condition of pregnancy and you were interested in watching where you were going?"

to which she answered: "Yes, sir."

This case is distinguishable from the case of Ice Service Company v. Scruggs, Tex.Civ.App., 284 S.W.2d 185, writ ref.,

n. r. e., relied upon by appellants. In that case the evidence was undisputed that there were partially melted ice particles in the immediate vicinity of the spot which caused plaintiff's fall, and that no other person other than the defendant employee had occasion to transport ice in such vicinity between the time an inspection had been made, showing the floor clear and free of ice and water, and the time plaintiff fell some 15 to 30 minutes thereafter. Further, there was evidence that on other occasions the defendant employee had carried ice onto the premises in such a way that ice would fall from the top of his ice bag.

The present case is also distinguishable from the cases of H. E. Butt Grocery Co. v. Johnson, Tex.Civ.App., 226 S.W.2d 501; Dawes v. J. C. Penney & Co., Tex.Civ.App., 236 S.W.2d 624; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, and J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698, cited by appellants. In those cases there was evidence of a permanent condition or structure making the premises not reasonably safe, or the presence or accumulation of some foreign substance rendering the premises dangerous to an invitee, and of which the defendant either had notice or which in the exercise of ordinary care the defendant would have discovered and taken steps to remove or protect against prior to the injury.

■ The mere presence of a foreign substance on a stairway of a store open for business is insufficient to warrant an inference that the defendant placed or left it there or had knowledge of its presence, or that it had been there long enough to have enabled the defendant to discover and correct it by the exercise of ordinary care. In Rawls v. Hochschild, Kohn & Company, Inc., 207 Md. 113, 113 A.2d 405, 410, 62 A.L.R.2d 124, the Court of Appeals of Maryland, in finding no error in the granting of defendant's motion for a judgment notwithstanding the verdict, stated that "it could not be proved that plaintiff was the first customer to enter the store and to walk down the stairway to the basement. * * * Thus it was purely a matter of speculation whether the alleged water was dropped by an employee or by someone else." The Court further stated:

"* * * there was no evidence to indicate how it had been brought there or how long it had been there. Therefore, we find that the alleged dangerous condition, namely the water on the stairway, was not such as to warrant the inference that it had been there long enough to have enabled defendant to discover and correct it by the exercise of ordinary care."

In the case of Montgomery Ward & Co., Inc. v. Hairston, 196 Md. 595, 78 A.2d 190, 191, where a customer slipped and fell on an oily place on the floor and broke her leg, and there was testimony that the floor had been mopped before the store was opened, the Court said:

"If there was foreign matter on the floor, it could have been caused by a customer tracking or dropping the substance immediately prior to the plaintiff's approach. We think the evidence is legally insufficient to support an inference of constructive notice, * * *"

See also Lane v. Massachusetts Mut. Ins. Co., Tex.Civ.App. Ft. Worth, 202 S.W. 2d 311; Montfort v. West Texas Hotel Co., Tex.Civ.App., 117 S.W.2d 811, writ ref.; Smith v. Safeway Stores, Tex.Civ.App. Ft. Worth, 167 S.W.2d 1044; Henderson v. Pipkin Grocery Co., Tex.Civ.App., 268 S.W. 2d 703, writ dism.; Annotations to Rawls v. Hochschild, Kohn & Co., supra, 62 A. L.R.2d 124, at page 151; Latimer v. Walgreen Drug Co. of Texas, Tex.Civ.App. Amarillo, 233 S.W.2d 209.

There being no evidence to support an inference of negligence on the part of appellee, the judgment of the Trial Court is affirmed.

Judgment affirmed.