**KING CONSTRUCTION COMPANY, Appellant,**

v.

**Hunter FLORES, d/b/a Freeport Machine & Boiler Shop, Appellee.**

No. 13913.

Court of Civil Appeals of Texas.

Houston.

June 28, 1962.

On Remittur July 12, 1962.

Rehearing Denied Sept. 13, 1962.

Ellis F. Morris, Houston, for appellant.

Wiley Thomas, Angleton, for appellee.

BELL, Chief Justice.

Appellee sued appellant, in form, on a sworn account to recover for materials, equipment and labor furnished and for the rental value of certain equipment. He also sued for attorney's fees. Trial was to a jury, and on the jury verdict judgment was rendered for appellee in the amount of $4,-534.55. This amount included attorney's fees of $1,295.00.

Basically three points of error are asserted. First, it is contended that except for the sum of $234.25 there is no evidence, or alternatively there is insufficient evidence to show the materials, labor and equipment were furnished appellant because there is no showing of authority in the person who allegedly made the arrangements for them. Second, it is contended the court erred in allowing any attorney's fees because suit was for rental of equipment or, alternatively, the amount found by the jury was so against the greater weight and preponderance of the evidence as to be clearly wrong. Third, the argument of appellee's counsel was inflammatory, erroneous and harmful in the respects we will later notice.

We hold there was evidence, and it was sufficient, to support the jury's answers because there is sufficient evidence that the equipment was rented, the labor done, and

the material furnished at the instance of an authorized representative of appellant.

King Construction Company is a partnership composed of George Caliva and Anthony Caliva. It had a contract to build a sewer treatment plant for the City of Freeport. It was in connection with this job that the indebtedness was incurred. The indebtedness sued for was created by reason of appellee furnishing the following:

1. Use of 190 feet of 8 "I" beams at $133.00 per month for 10 months for a total rental of $1,330.00.

2. Use of a dragline, dragline bucket and clam shell bucket for 2 weeks at $500.00 per week, or a total rental of $1,000.00.

3. Use of a ¾ yard bucket, a 6″ pump and a 6″ suction hose for 3 weeks, for a total rental of $412.00.

4. Labor and material in the total amount of $491.50.

We have separated the various classes of items because of appellant's contention with regard to attorney's fees.

The bookkeeper for appellee testified that as the various charges were incurred she sent appellant invoices at its office at 3818 Chaffin St., Houston, Texas. The first invoice was dated October 5, 1959 and the last October, 1960. There were 13 invoices. Appellant admitted by pleading it owed $100.00 rental of a dragline for one day represented by invoice 3096 dated October 5, 1959. This invoice was actually for a total of $1100.00. Also he admits owing $134.25 shown on Invoice 3126 dated November 11, 1959. This was for rental of a ¾ yard clam shell bucket. There were two other items on the same invoice aggregating $277.75. The bookkeeper testified no payment at all had been made.

Mr. Kennedy, who at all material times was employed by appellee, testified that about October 5, 1959 he personally handled the moving of a dragline to the construction job of appellant. He had to move it in by barge along a canal. He testified the rea-

sonable rental charge was $500.00 per week and this was agreed to by King Construction Company. He also testified that when they took their machine off the job "the superintendent on the job" stated he needed the machine, but Kennedy having need of the machine elsewhere moved it. Mr. Kennedy also personally delivered the pump, clam shell bucket and suction hose to the job. These were needed on the job to keep a pit cleaned out. With regard to the I beams Mr. Kennedy testified that Mr. King, the superintendent on the job, came to him and told him they were about to lose the coffer dam and wanted to get all the I beams they could to brace the dam. Mr. Kennedy, a welder, and another man took some I beams to the job and braced the dam. The next morning Mr. King came for more I beams. They were provided. The rental of these beams that went into the coffer dam was shown to be $133.00 per month. Mr. Kennedy testified he talked to Mr. Haganis and Mr. King of appellant Company about the rental of the dragline. Appellant's motion for continuance shows Haganis was its employee connected with the job.

Mr. Flores also testified he talked to Haganis about rental of the dragline.

Other evidence showed appellant never complained about the invoices sent it or any charge shown on them until suit was filed though evidence does show they never paid anything on the account.

We think that appellant's admission that it owed $100.00 for use of the dragline that was furnished by appellee on October 5, 1959, the commencement date of the account, is an admission that whoever rented it had authority to do so. Too, Mr. Kennedy testified Mr. King, the superintendent on the job, made the agreement for the rental and used it on the job. Also, the I beams were contracted for by Mr. King and were installed in the coffer dam on the job. With regard to rental of the ¾ yard dragline bucket rented and used on the job appellant admits it owes the amount charged. On the same invoice were charges

made for rental of a pump and suction line. The invoice was sent to appellant and no complaint was made of the charges. It seems to us that where, as here, an account for a job is opened by one shown to have authority to open it and invoices are sent thereafter by the particular creditor for other things furnished for the same job and the debtor over the period of nearly a year raises no question about the charges, a prima facie case of authority is established. After the dragline was rented on October 5, 1959, invoices for all other items furnished were sent appellant and at no time did it communicate to appellee any complaint about any of the charges. Too, it seems to us the superintendent on the job would have authority to contract for those things reasonably necessary in carrying on the job. Too, here it is shown the things charged for were actually used on the job with knowledge of the superintendent.

■ Appellee having made out a prima facie case of authority of the agent to contract for the items shown, the jury could consider, in weighing the evidence, the failure of the partners to testify. Certainly there being a prima facie case, it is of real significance that the partners did not even testify denying what has been proven. Such failure is evidence of the truth of facts established prima facie from other testimony. Bayou Drilling Co. of Texas v. Baillio, Tex.Civ.App., 312 S.W.2d 705, ref., n. r. e.

Appellant next complains of various parts of the argument of appellee's counsel and that such argument was harmful. The parts complained of are:

1. "this is a case where a hot shot in Houston, operating in in partnership under the name of King Construction Company, come down here to Brazoria County, to the City of Freeport, and sign a contract for $337,000.00 to build a sewerage disposal plant."

2. "Mr. Holder's pleading show you that they run over time, they owe $13,000.00 in liquidated damage to the City and they owe so many people for much services that were performed down there, that the City of Freeport and the Bonding Company have put the money in the courthouse, and then this lawyer, I don't know whether he is associated with King Construction Company or the Insurance Company, that he purports to represent, comes down here and tells you that Mr. Kennedy is lying."

3. "He tells you that Hunter Flores, who has been in Brazoria County and Freeport, operating a legitimate business for years and years is dishonest in this suit."

4. "Yes, sir, Mr. Morris, you can anticipate right that I am going to ask you where are the Cliva's, where is Anthony Cliva, where is George Cliva, where is Haginas, where are the bookkeepers from King Construction Company. The Sheriff of Harris County can't find them."

5. "They are trying to beat this man out of his money, * * * I know that I shouldn't get worked up over a few accounts and a bunch of money, * * I couldn't bring it on * * * why they picked up this dragline, but this insurance company lawyer did * * * they got word that Cliva was not going to pay their bill, they were going to beat them out of their money, they worried about it, isn't that what Mr. Kennedy said, in so many words. * * * the evidence conclusively shows that these people in Houston are bent on beating everybody out of their money."

6. "Talk about a lawyer fees, I don't have a family, and I live, I guess in the biggest house in Brazoria County, with a dog, so I can't go home and look my family in the eye, but if I go home at night and feed my dog, after three days in this courthouse, having put not one witness on the stand to

controvert the evidence, I couldn't look that dog in the eye, when I started to feed her hamburger meat, I believe I would back up and feed her."

7. "The Cliva's didn't come down here and let you look at them, it is a matter of—Haganus, the Sheriff of Harris County can't find him, I wonder where he is, I wonder if he is in the State or in the penitentiary over just such jobs as they have pulled down there in the City of Freeport, but one thing about it we have the money in the District Clerk's office."

8. "Why, if they have any defense to this, why didn't they come down here and look a Brazoria County jury in the eye."

9. "Why did they come down here and take better than $330,000.00 tax money out of this city, and get a lawyer out of Houston, and—who doesn't put one single solitary witness on the stand."

10. " * * * I believe in mercy, but they are down here, where they are in the business of making money."

11. "If they didn't have it for two weeks, why didn't they come here."

12. "Are you going to answer these issues, because of an, in my opinion of an asinine argument made about whether or not Mr. Kennedy and Mr. Flores seen those jokers from Houston using this dragline."

13. "I am telling you right now, I am going to—I am going to go along with this argument."

14. "I get a little bit roused, when he says Mr. Kennedy is lying and Mr. Flores is dishonest, * * * Are they going to send one lawyer down here and let him make an argument that will tell you not to answer these issues by a preponderance of the evidence."

■ Of the first paragraph, it is to be observed that the City of Freeport was a party defendant and it fully pled the contract and the amount. The City presumably read its pleading to the jury because it did not go out of the case until the appellee rested its case. Too, we note no objection was made to the argument and even if erroneous, and we do not think it was, its harmful effect, if any, could have been removed by proper instruction.

■ With regard to the second paragraph of the argument, it is to be observed that the pleadings did allege appellant owed liquidated damages of $13,000.00. Too, it was in the pleadings read to the jury that the City tendered the money into court. The same pleading alleged various claims had been filed with the City by other claimants. Further when Mr. Kennedy testified, at one point in his testimony he testified he got the dragline because he had heard other people were owed for work done for appellant. The appellant's counsel had charged Mr. Kennedy with lying. Too, the bonding company was a party defendant and remained so until it went out on instructed verdict when appellee rested. Too, it was represented by the same counsel as was appellant. The argument gave no information to the jury it did not have already. Too, no objection was made to the argument.

■ Appellant's counsel had, in his argument, brought up that the Calivas had not testified. Comment on their failure to testify was legitimate comment by appellee. Too, Haganis had been shown to have been employed by appellant. Also it was in evidence that the sheriff of Harris County had been unable to find the Calivas.

With regard to all the argument now objected to by appellant, it is to be noted that, with the exception hereinafter noted, no objection was made to it until the motion for new trial. None of it, we consider, under this record, to have been erroneous. However, if it was, the argument was of a

nature that any harmful effect could have been removed by proper instruction. By not having objected and asking for an instruction that the jury not consider the part complained of, there was a waiver.

■ The only part of the argument to which objection was made was paragraph 7. above quoted. When it was made the appellant's counsel objected that the speculation as to whether Haganis was in the penitentiary was calculated to prejudice the jury. The court immediately instructed the jury to disregard the statement as to the whereabouts of Haganis. Too, appellee's counsel withdrew the argument and asked the jury to disregard it.

It was erroneous to make the speculation. It, however, was mere speculation and not a statement of fact. We feel any harmful effect that might have resulted was removed by the prompt instruction.

Too, on the whole record, we are convinced no harm resulted from any of the argument.

Appellant complains of the submission of an issue on attorney's fees because of there being no evidence and insufficient evidence to support submission. We overrule both contentions.

■ However, appellant raises the issue that the jury's finding that a reasonable attorney's fee would be $1,295.00 is so contrary to the overwhelming weight and preponderance of the evidence as to be wrong and unjust. This is an attack on the amount as being excessive. We sustain this point. There was evidence establishing that appellee performed labor and furnished material in the amount of $491.50. Certainly under Article 2226, Vernon's Ann. Tex.Civ.St., a reasonable attorney's fee would be recoverable in a suit to recover on this character of debt. This suit, however, also sought recovery for rental of a dragline, dragline buckets, clam shell buckets, a pump and a suction hose. The rental for these aggregated $1,412.00. We are of the view that for this type of debt attorney's

fees are not recoverable. No title to any personal property passed and we do not think this amounts to "material furnished" within the meaning of Article 2226. Davenport v. Harry Payne Motors, Inc., Tex.Civ. App., 256 S.W.2d 245, no writ hist.; Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75; Max O. Coulson et al., d/b/a Brickstone of Ft. Worth v. Avis Auto Rentals, Inc., Tex. Civ.App., 352 S.W.2d 849, ref., n. r. e.

The question arises as to whether attorney's fees are recoverable on that part of the claim representing rental for I beams. Article 2226 provides for an attorney's fee where the party suing has a valid claim for "materials furnished." We are of the view that the rental for the I beams is a valid claim for "materials furnished" and, therefore, comes within Article 2226 authorizing an attorney's fee. The rental for the beams was $1,330.00. The recovery for other material furnished and labor done was $491.50. We therefore have a total recovery for items, for which an attorney's fee is allowable, of $1,821.50. The attorney's fee of $1,295.00 allowed below is in our opinion excessive. A reasonable attorney's fee in the light of the record is, in our opinion, $750.00. The judgment below was excessive by $545.00.

If within 15 days appellee files a remittitur in this amount, the judgment of the trial court will be reformed and, as reformed, affirmed. If such remittitur is not filed, the case will be reversed and the cause remanded.

## On Remittitur

On June 28, 1962, we indicated by an opinion in writing that if appellee would file a remittitur of $545.00 within 15 days of such date the judgment of the trial court would be reformed and as reformed would be affirmed; otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $545.00 from the judgment

recovered by appellee, and, as so reformed, is affirmed.

One-fourth of the costs of the present appeal will be taxed against appellee, and three-fourths against appellant.

Motion for rehearing may be filed by either party within 15 days after this date.