**H. E. BUTT GROCERY COMPANY, Appellant,**

v.

**Aline BRUNER, Appellee.**

No. 5487.

Court of Civil Appeals of Texas, Waco.

Nov. 20, 1975.

Rehearing Denied Dec. 11, 1975.

Naman, Howell, Smith & Chase, Louis S. Muldrow, Waco, for appellant.

Sleeper, Williams, Johnston, Helm & Estes, Minor L. Helm, Jr., Waco, for appellee.

## OPINION

JAMES, Justice.

■ This is a venue case. The Plaintiff slipped upon a green onion stalk and fell in the Defendant's store. She brought this suit in McLennan County, where the store is located, for her damages. The Defendant's controverted plea of privilege to be sued in Nueces County, the asserted county of its residence, was overruled. It appeals. The single question we must decide is whether the evidence is legally sufficient to support the finding implied in the judgment that the onion stalk had been on the floor of the store for such length of time that by the exercise of ordinary care the Defendant should have discovered and removed it. We hold the evidence is legally sufficient and affirm the trial court's judgment.

Plaintiff-Appellee Mrs. Bruner, a 64 year old woman, went into the Defendant store at or about 4 PM on Saturday afternoon, May 5, 1973. There were "not too many" customers in the store at the time. She picked up a few vegetables and went through a checking counter, took "two or three" steps from the checking counter to her right, at which time she stepped on an "onion top" on the floor, and thereupon fell, causing the alleged personal injuries sued for. There were a number of checkout stands in a line in the front portion of the store. There was a space of about ten feet between the line of checkout stands and the front wall of the store, in which portion of the store Plaintiff slipped and fell.

Plaintiff was checked out at the second checkout stand from the left end, as you look from the front of the store to the rear. The checkout stand through which she passed was manned by two people, one being a checkout clerk and the other a "sacker." There were a number of the other checkout stands open and operating at the time in question, each likewise being manned by a checkout clerk and a sacking clerk.

Plaintiff's head struck the floor in the fall and she was knocked unconscious, after which she would alternately regain consciousness and then relapse into unconsciousness. When she fell, she heard one of the male employees say, "Get her up quick." Then two of the male employees picked her up. Then one of the boys, seeing the onion top Plaintiff had stepped on, said to the other, "Get rid of that thing." The onion top was "long and juicy," looking like it had been "stepped on and mashed." Then one of the female checking employees came over and asked Plaintiff, "Do you need me to help you outside?" Plaintiff replied, "I don't think so."

One of the boys asked the other "where the manager was" to which the other boy said, "He's gone out the back door to check a truck."

Plaintiff did not see "anybody with a broom or anybody with a mop and bucket

or anything like that" anywhere around in the process of cleaning up the floor, at or before her fall.

█ The issue of whether or not a given act or omission constitutes negligence is essentially a fact question. The facts of each case must be given independent consideration, and seldom are the facts of any two cases so identical as that the decision in one could be held to be authority for a like decision in the other. *Blanks v. Southland Hotel* (1950), 149 Tex. 139, 229 S.W.2d 357.

█ In the case at bar, the trial court as trier of fact had the right under this record to consider all the surrounding facts and circumstances presented, including the size and arrangement of the store, the volume of customers in the store at the time in question, the frequency with which the area of the store was used in which Plaintiff slipped and fell, the number and proximity of Defendant's employees in the vicinity of the accident, at and immediately prior to the accident, the act of the employees in getting rid of the onion top so that it would not be available to Plaintiff as evidence, the fact that no employee of Defendant was cleaning up the floor at any time material to this incident, the fact that the store manager was not around at the time and place of the accident, as well as any and all other facts presented. See *R. E. Cox Dry Goods Co. v. Kellog* (Waco Tex.Civ.App. 1940), 145 S.W.2d 675, writ refused; *H. E. Butt Grocery Co. v. Johnson* (San Antonio Tex.Civ.App.1949), 226 S.W.2d 501, error refused NRE; *S. H. Kress & Co. v. Selph* (Beaumont Tex.Civ.App.1952), 250 S.W.2d 883, error refused NRE.

Among the above-stated facts and circumstances surrounding this accident, it is significant that the Defendant's employees deliberately "got rid" of the onion stalk upon which Mrs. Bruner slipped and fell. Mrs. Bruner testified that the stalk was "long and juicy," and looked like it had been "stepped on and mashed." The onion stalk was last known to have been in possession of Defendant's employees, was not produced in court, nor did Defendant offer any explanation for the intentional and deliberate spoliation of this vital piece of evidence. Since the onion stalk was described by Plaintiff as "long and juicy," and looked like it had been "stepped on and mashed," the question naturally arises: was it stepped on and mashed only by Plaintiff (in which event it may have been on the floor a very short time) or was it stepped on and mashed by one or more people in addition to Plaintiff (in which event it may well have been on the floor for a sufficient period of time in which Defendant by the exercise of ordinary diligence should have discovered and removed it)?

Had the onion stalk been available as evidence and produced in court, this question might have been answered. Since the onion stalk was "gotten rid of" by Defendant, with no explanations given therefor by Defendant, certain rules of law come into play:

█ Failure to produce evidence within a party's control raises the presumption that if produced it would operate against him, and every intendment will be in favor of the opposite party. The force of evidence is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means are readily accessible to him. *Galveston, H. & S. A. Ry. v. Young* (1907), 45 Tex.Civ.App., 100 S.W. 993, writ refused; *Lindsey v. State* (Eastland Tex. Civ.App.1946), 194 S.W.2d 413, error refused NRE; *King Construction Co. v. Flores* (Houston Tex.Civ.App. 1st 1962), 359 S.W.2d 919, error refused NRE; *Fain v. Beaver* (Waco Tex.Civ.App.1972), 478 S.W.2d 816, error refused NRE.

█ Our Supreme Court states the rule in this way: Where a party is in possession of evidence and does not testify, the trial court is authorized to take such failure to testify into consideration "not only as strengthening the probative force of the testimony offered to establish the issue, but (such failure) is of itself clothed with some probative force." *State v. Gray* (1943), 141

Tex. 604, 175 S.W.2d 224. Likewise, the following authorities stand for the proposition that such failure of a party to testify or to produce evidence creates a presumption unfavorable to such party which of itself has probative force: *English Freight Co. v. Knox* (Austin Tex.Civ.App.1944), 180 S.W.2d 633, error refused W.M.; *Union Transports Inc. v. Braun* (Eastland Tex.Civ. App.1958), 318 S.W.2d 927, no writ history; *De Muth v. Head* (Dallas Tex.Civ.App.1964), 378 S.W.2d 389, error refused NRE. Such a presumption is not evidence, but rather a rule of procedure or an "administrative assumption" which "vanishes" or is "put to flight" when positive evidence is introduced. It is not evidence and when met by rebutting proof it is not to be weighed or treated as evidence by the trier of fact. *Empire Gas & Fuel Co. v. Muegge* (1940), 135 Tex. 520, 143 S.W.2d 763, opinion adopted. Such a presumption when unrebutted, as in the case at bar, may fully establish a fact in issue, not as evidence, but as an artificial legal equivalent of the evidence otherwise necessary to do so. *Strain v. Martin* (Eastland Tex.Civ.App.1944), 183 S.W.2d 246, no writ history; 23 Tex.Jur.2d, "Evidence", par. 66, pp. 104, 105.

■ A kindred rule to the foregoing, applicable to the case at bar, is that the intentional spoliation or destruction of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the cause of the spoliator. McCormick and Ray, Texas Evidence (Second Edition), Vol. 1, Section 103, pp. 141, 142. The deliberate destruction of evidence gives rise to the presumption that the matter destroyed is not favorable to the spoliator, and it has been held that where a deed is shown to have been intentionally destroyed, the party relying on it was required to rebut all inferences of fraudulent intent or purpose before secondary evidence was admissible. *Massie v. Hutcheson* (1925), 110 Tex. 558, 270 S.W. 544, opinion adopted.

Applying the foregoing rules to the case at bar, the following conclusions are in our opinion inescapable:

■ The intentional spoliation and destruction of the onion stalk created the presumption that its introduction into evidence would have been unfavorable to Defendant, that is to say, that it would have shown that it was sufficiently "stepped on and mashed" as to lead to the conclusion that it had lain on the floor for a sufficient period of time that the Defendant should have, by the exercise of reasonable diligence, discovered and removed it. Since this presumption was not rebutted by the Defendant, the trial court was authorized to take such presumption into consideration, not only as strengthening the testimony offered by Plaintiff, but also he was authorized to consider that such presumption in and of itself had probative value. This presumption, when taken together with all the other facts and circumstances presented by Plaintiff's testimony as hereinabove outlined, was legally sufficient to support the trial court's implied finding that the onion stalk had been on the floor of Defendant's store for such length of time that by the exercise of ordinary care the Defendant should have discovered and removed it.

Finally, our Supreme Court has held: "On appeal from an order overruling a plea of privilege, every reasonable intendment must be resolved in favor of the trial court's judgment." *James v. Drye* (1959), 159 Tex. 321, 320 S.W.2d 319.

For all of the above reasons we affirm the trial court's judgment.

HALL, Justice (dissenting).

I respectfully dissent.

The plaintiff's testimony in full regarding the nature and appearance of the object she slipped on is as follows:

"Q. Now, do you know for sure of your own personal knowledge what you stepped on?

"A. I couldn't swear to it, but it looked like . . . It was about that

long and juicy. (Indicating). And I can't think of anything that looked like that except a green onion top.

"Q. What color was it?

"A. Green.

"Q. Okay. And you've seen onion tops many times?

"A. Well, I've topped a-many of them, I know.

"Q. Okay. And what you saw, was there just one individual onion stalk?

"A. It was.

"Q. In other words, like you had taken an onion and cut off one little green leafy stalk from the top of it?

"A. It was a full grown one.

"Q. Okay. And how long would you say it was?

"A. About that long. (Indicating).

"Q. All right. You're indicating what? About seven inches?

"A. (By plaintiff's attorney) Seven or eight inches.

"Q. Okay. Did you see this, if it was an onion top, did you see it before you fell?

"A. No.

"Q. Okay. Did you ever, yourself, pick up or examine what looked to you like it was an onion top?

"A. The thing I slipped on?

"Q. Yes.

"A. Well, I didn't have a chance.

"Q. Okay. So, you did not pick it up and look at it closely?

"A. No, sir. I didn't.

"Q. Can you describe its appearance to me other than being, as you said, green and about seven or eight inches long and looking like a single onion stalk?

"A. Well, it was just like anybody stepped on it and mashed it, and the juice was out of it.

"Q. Okay. It appeared as though it had been stepped on?

"A. It had been.

"Q. Okay. Because you had stepped on it?

"A. I certainly did.

"Q. Okay. Did you have anything on your shoes or your clothing that you either then or later examined or inspected, and from which you could determine what it was that you had stepped on?

"A. No.

"Q. Okay. Do you, of your own personal knowledge, know or do you have any way of knowing how long it had been on the floor before you stepped on it?

"A. No, sir. I sure don't.

"Q. Okay. And do you know or do you have any way of determining who may have dropped the onion stalk onto the floor?

"A. No, sir. I wouldn't know that either.

"Q. Okay. Was there anything about the appearance of the onion top in the very brief period of time that you saw it, that could in any way tell you how long it had been on the floor?

"A. It couldn't have been there too long or it would have been wilted looking.

"Q. Okay. And it was not?

"A. It was not.

"Q. Okay. Did you see any marks or anything on the floor that would indicate to you that it had been stepped on more than once or anything like that?

"A. Mister, I wasn't looking for any marks. I was blacking out and coming to and blacking out again all that time. Now, I don't know about that.

"Q. All right. So, I am assuming that you did not see anything like that on the floor?

"A. No, sir. I don't remember anything."

Clearly, this testimony cannot spawn the inference asserted by the majority that the stalk had been stepped on by others in the store before the plaintiff did so. But granted the inference arguendo, it does not establish any length of time—long, short, or momentary—the stalk was on the floor before the plaintiff's fall. See, *H. E. Butt Grocery Company v. Russell* (Tex.Civ.App. —Waco, 1965, writ ref.), 391 S.W.2d 571, discussed infra. It does not, therefore, support the implied finding that the stalk was on the floor long enough to charge the defendant with constructive notice of its presence there. This finding is vital to the order in question.

The majority cites the testimony showing the area in the store where the fall occurred, the volume of customers in the store (shown only to be "not too many"), together with the showing of several employees in close proximity to the place of the accident at the time, and other recited circumstances, as supporting the finding, citing *R. E. Cox Dry Goods Co. v. Kellog* (Tex.Civ.App. —Waco, 1940, writ ref.), 145 S.W.2d 675; *H. E. Butt Grocery Co. v. Johnson* (Tex.Civ. App.—San Antonio, 1949, writ ref., n. r. e.), 226 S.W.2d 501; and *S. H. Kress & Co. v. Selph* (Tex.Civ.App.—Beaumont, 1952, writ ref., n. r. e.), 250 S.W.2d 883. While these facts, if connected with a showing of but a short period of time the stalk lay on the floor might be sufficient to support a finding that the defendant's employees should have discovered and removed it, *they are not proof of that critical period of time.* They do not support the questioned finding. Insofar as they show, or the record as a whole shows, the stalk could have been dropped on the floor only moments before the plaintiff stepped on it.

In *R. E. Cox Dry Goods Co. v. Kellog,* supra, the plaintiff stumbled and fell over a salesman's sample case, 14 inches high, 8 inches wide, and 30 inches long, in a narrow aisle provided for customers, which the evidence shows had been in the aisle along with other sample cases "for the whole of the hour prior to the accident." In *H. E. Butt Grocery Co. v. Johnson,* supra, the plaintiff slipped and fell in a wet place in front of a large ice box containing bottles of soft drinks, located near a busy exit of the store. The wet area was "about as big as the box," contained broken pieces of a bottle, was "dusty, grimy, and muddy." Upon learning of the accident, the store manager said, "I thought that had been taken care of." In *S. H. Kress & Co. v. Selph,* supra, the plaintiff slipped and fell on a piece of candy. She testified that the candy "looked like it had been there for several days," that it "had been mashed and swept over," and that it "had the marks of a broom over it." These cases are clearly distinguishable on their facts from our case. Each contains proof of a time span during which the defendant, if exercising ordinary care, would have discovered the foreign substance.

Our facts, on the question of how long the stalk was on the floor, are more like the facts in the cases of *H. E. Butt Grocery Company v. Russell* (Tex.Civ.App.—Waco, 1965, writ ref.), 391 S.W.2d 571, and *Sherwood v. Medical & Surgical Group, Inc.* (Tex.Civ.App.—Waco, 1960, writ ref.), 334 S.W.2d 520. In *Russell,* the plaintiff slipped on a lettuce leaf. The opinion recites these as the salient facts: "Defendant's store manager testified he did not instruct any employees to inspect the area where plaintiff testified she slipped between 5:00 P.M. and 6:00 P.M., 'a busy time.' Plaintiff's fall was near the checkout counter as she started with her purchases to the front door where there was heavy customer traffic, she testified. The piece of lettuce was larger than her hand. Her testimony was that she did not know how long it had been there, but it had dark spots and 'had been stepped on by somebody else's heel because it was mashed, you

know, bruised on the other side.' She did not see it before she stepped on it." This court reversed a judgment on a verdict for the plaintiff and rendered judgment for the defendant, holding: "These circumstances did not raise an inference that the lettuce leaf had been on the floor for a sufficient time to impose constructive knowledge of its presence upon defendant. They are equally consistent with an inference the leaf had been dropped and stepped on a few seconds, or at any other arbitrary and unknown period of time before plaintiff slipped." In *Sherwood,* the plaintiff "stepped in something real slippery" and fell about two feet from the receptionist's desk as she walked through the reception hall in the defendant's offices. She testified that after receiving attention from doctors, she came back to the place where she had fallen and noticed "smudge spots and smear spots, this way and that way. You could see where my foot had slid through this stuff on the floor. It was loose. What I would call it—it was either a floor dressing of some kind—it wasn't buffed down or polished good." After she got home she noticed there was a dry, "sparkly" substance around a hole in her hose at the knee. The same substance was smeared on her hand, arm, knee and cheek. It was later identified as being floor wax or floor polish. Affirming an instructed verdict, this court held the evidence did not show how long the slippery substance had been on the floor. See also, *Swan v. Kroger Company* (Tex.Civ.App.—Beaumont, 1970, writ ref., n. r. e.), 452 S.W.2d 793; *Green v. J. Weingarten, Inc.* (Tex.Civ.App.—Eastland, 1965, no writ hist.), 398 S.W.2d 447; *Great Atlantic Pacific Tea Company v. Giles* (Tex.Civ.App.—Dallas, 1962, writ ref., n. r. e.), 354 S.W.2d 410; *O'Neal v. J. Weingarten, Inc.* (Tex.Civ.App.—Beaumont, 1959, writ ref., n. r. e.), 328 S.W.2d 793.

These cases, and many others, are simply restatements of the fundamental law of this State that a storekeeper is not an insurer of the safety of his invited guests, and that the mere presence of some foreign substance on the floor is insufficient to warrant an inference that it had been there long enough to enable the storekeeper to discover and correct or remove it by the exercise of ordinary care. See, *J. Weingarten, Inc., v. Razey* (Tex.Sup., 1968), 426 S.W.2d 538, 539; *Monfort v. West Texas Hotel Co.* (Tex.Civ.App.—El Paso, 1938, writ ref.), 117 S.W.2d 811, 813; *Dill v. Holt's Sporting Goods Store* (Tex.Civ.App.—Hou. 1st, 1959, no writ hist.), 323 S.W.2d 644, 649; *Great Atlantic & Pacific Tea Company v. Giles,* supra, at 354 S.W.2d 414.

Finally, the majority's reliance upon the presumptions raised by the defendant's destruction of evidence and its failure to come forward with proof is, in my opinion, misplaced.

The willful suppression or destruction of relevant evidence by a party, or his failure to produce relevant evidence which he could have produced, can, under proper circumstances, raise presumptions that the evidence, if available or if offered, would have been unfavorable to him and would not have supported his contentions. 1 McCormick & Ray 135, *Texas Law Of Evidence* (2nd ed., 1956), §§ 100, 103; *Missouri Pac. R. Co. v. Sparks* (Tex.Civ.App.—Hou. 14th, 1968, writ ref., n. r. e.), 424 S.W.2d 12, 17. Presumptions of this nature not only strengthen the probative force of the adverse party's proof on the issue to which they relate, but are of themselves clothed with some probative force thereon. *State v. Gray,* 141 Tex. 604, 175 S.W.2d 224, 226 (1943). But these presumptions have no application until the party to whose benefit they would accrue has established a prima facie case. They do not, per se, establish vital elements of his case. This is not only the Texas rule, it is universal. *Turner v. Texas Company,* 138 Tex. 380, 159 S.W.2d 112, 117 (1942); 1 McCormick & Ray, supra, pp. 137–38; 31A C.J.S. Evidence § 153, pp. 388–90; 29 Am.Jur.2d 220–21, Evidence, § 177. It is set forth by our Supreme Court in the *Turner* case as follows:

"The fact that the record contains no evidence tending to prove that Hagan was the driver of the automobile that struck plaintiff's truck or that he was present at or near the place of the collision fully answers the contention that plaintiff's case can be aided by the failure of the defendants to produce Hagan's testimony. But even if it were assumed that Hagan was the driver of the automobile, a presumption that his testimony would be favorable to the plaintiff would not relieve the plaintiff from proving his case. The rule is that such presumption does not arise until the party upon whom the burden of proof rests has made a prima facie case. *Texas & Pacific Ry. Co. v. Shoemaker,* 98 Tex. 451, 456, 84 S.W. 1049; *Pullman Palace Car Co. v. Nelson,* 22 Tex.Civ.App. 223, 54 S.W. 624, 626; *Wichita Falls, R. & Ft. W. Ry. Co. v. Emberlin,* Tex.Civ.App., 255 S.W. 796, 805; *Texas Unity Oil Co. v. Dolman,* Tex. Civ.App., 8 S.W.2d 815; *Schumacher v. Missouri Pacific Transp. Co.,* Tex.Civ. App., 116 S.W.2d 1136; *Railroad Commission v. Humble Oil & Refining Co.,* Tex. Civ.App., 123 S.W.2d 423; McCormick and Ray's Texas Law of Evidence, pp. 108–111, Sec. 59. The burden was upon the plaintiff to prove all of the three elements of discovered peril. His evidence did not make a prima facie case."

In summary, there is no evidence in the record before us showing the length of time the onion stalk lay on the floor before the plaintiff slipped on it. Was it an hour? Several minutes? Only moments? Any one of these conjectures is as valid as the others. The time is unknown. The presumptions relied upon by the majority cannot and do not supply this proof. This proof is critical to the implied finding upon which the judgment hangs. Without it, the finding must be set aside and the judgment must fall.

The deposition of the plaintiff was the only evidence offered on the trial. Under the authority of *Jackson v. Hall,* 147 Tex. 245, 214 S.W.2d 458 (1948), I would reverse the judgment and remand the case to the trial court for possible further development.